1  Galen T. Shimoda (Cal. State Bar No. 226752)
   Justin P. Rodriguez (Cal. State Bar No. 278275)
2  **Shimoda & Rodriguez Law, PC**
   9401 East Stockton Boulevard, Suite 120
3  Elk Grove, CA 95624
   Telephone: (916) 525-0716
4  Facsimile: (916) 760-3733

5  Attorneys for Plaintiff ANTHONY LINGLE,
   individually and on behalf of all other similarly situated employees

6

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10  ANTHONY LINGLE, individually and on            **Case No.: 2:22-cv-01471-JDP**
    behalf of all other similarly situated
11  employees,                                      Sacramento County Superior Court
                                                    Case No. 34-2021-00311991
12
            Plaintiff,
13                                                  **CLASS ACTION**
14       vs.
                                                    **SECOND AMENDED COMPLAINT FOR**
15  CENTIMARK CORPORATION, a                        **DAMAGES:**
    Pennsylvania Corporation; and DOES 1 to
16  100, inclusive,                                 1.  **Failure to Pay Overtime Wages**
                                                    2.  **Failure to Pay Minimum Wages**
17          Defendants.                             3.  **Meal Period Violations**
                                                    4.  **Rest Period Violations**
18                                                  5.  **Wage Statement Violations**
                                                    6.  **Waiting Time Penalties**
19                                                  7.  **Failure to Reimburse Expenses**
                                                    8.  **Unfair Competition**
20                                                  9.  **Private Attorneys General Act**
21
                                                    **DEMAND FOR JURY TRIAL**
22

23

24

25

26

27

28

Plaintiff ANTHONY LINGLE ("Plaintiff"), on behalf of himself and all other similarly situated employees, hereby files this Second Amended Complaint against Defendants CENTIMARK CORPORATION, a Pennsylvania Corporation; and DOES 1 to 100, inclusive (hereinafter all collectively referred to as "Defendants").  On information and belief, Plaintiff alleges the following:

## INTRODUCTION

1.    This is a class action and Private Attorneys General Act ("PAGA") lawsuit brought by Plaintiff for failure to pay minimum wages, failure to pay overtime wages, meal period violations, rest period violations, wage statement violations, failure to timely pay final wages, failure to reimburse expenses, and unfair competition, statutory penalties, and civil penalties for violations of the California Labor Code.

## JURISDICTION AND VENUE

2.    The United States District Court for the Eastern District of California has jurisdiction in this matter under the Class Action Fairness Act.  *See* 28 U.S.C. § 1332(d).

3.    Venue is proper as this action was removed to the district court in which the state court action was pending.  *See* 28 U.S.C. §§ 1390(c), 1441(a).

4.    Plaintiff has sought permission pursuant to California Labor Code section 2699 *et seq.* to pursue the claims set forth in this Complaint against Defendants as a Private Attorney General on behalf of himself and other similarly situated employees.  Pursuant to California Labor Code section 2699.3, Plaintiff gave written notice via online submission to the Labor and Workforce Development Agency ("LWDA") on approximately November 19, 2021.  Plaintiff provided facts and legal bases for his claims within the notice to the LWDA on all violations asserted under the PAGA cause of action. Plaintiff also submitted the $75.00 filing fee.  The November 19, 2021, notice was also sent via certified mail to Defendants on the same day.  To date, the LWDA has not provided any response to Plaintiff's notice correspondence.  Accordingly, Plaintiff has exhausted all administrative remedies pursuant to the PAGA and may bring this action on behalf of himself and all similarly situated employees, *i.e.* aggrieved employees.  *See* Cal. Lab. Code § 2699.3(a)(2)(A), (c)(3); *Caliber Bodyworks, Inc., v. Sup. Ct.*, 134 Cal. App. 4th 365, 383 n.18, 385 n.19 (2005).  Aggrieved employees include, but are not limited to the following: all non-exempt employees who have or continue to work for Defendants in

California from November 19, 2020 to the present, excluding any individuals employed solely as office or administrative staff.

## PARTIES

5.     ANTHONY LINGLE is an individual over the age of eighteen (18) and is a resident of the State of California.

6.     On information and belief, Plaintiff alleges, CENTIMARK CORPORATION, is now and/or at all times mentioned in this Complaint was Pennsylvania Corporation and the owner and operator of an industry, business and/or facility doing business in the State of California.

7.     Defendants DOES 1 through 100 are affiliates, subsidiaries and related entities and the alter egos of each of the other Defendants named herein, corporate or otherwise, who participated in and are liable for the actions herein alleged.  Plaintiff will seek to amend this Complaint to allege the true names and capacities of these DOE Defendants when they are ascertained.

8.     At all times mentioned herein, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment.  The Defendants are jointly and severally liable to Plaintiff.

9.     Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint employment, joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint employment, joint venture, partnership and common enterprise.

10.     Defendants, and each of them, now and/or at all times mentioned in this Complaint approved, ratified, acquiesced, aided or abetted the acts and omissions alleged in this Complaint.

11.     Defendants proximately caused Plaintiff to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

## CLASS ALLEGATIONS

12.     Plaintiff brings the First through Eighth Causes of Action on behalf of himself and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23.  The class that Plaintiff seeks to represent is composed of and defined as follows:

**SECOND AMENDED CLASS ACTION COMPLAINT**

UCL Class: All non-exempt employees who have or continue to work for Defendants in California from July 11, 2018, to the present, excluding any individuals employed solely as office or administrative staff.

Non-UCL Class: All non-exempt employees who have or continue to work for Defendants in California from December 2, 2018, to the present, excluding any individuals employed solely as office or administrative staff

13.    This action has been brought and may be properly maintained as a class action, pursuant to the provision of Federal Rule of Civil Procedure 23, because there is a well-defined community of interests in the litigation and the proposed class is easily ascertainable.

(a)    <u>Numerosity</u>: The putative class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that Defendants have employed over (100) individuals falling within the above stated class definitions throughout the State of California during the applicable statute of limitations, who were subjected to the policies and practices outlined in this Complaint.  As such, joinder of all members of the putative class is not practicable.

(b)    <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all members of the putative class and predominate over questions that affect only individual members of the class.  These common questions of law and fact include, without limitation, the following:

(1)    Whether Defendants paid Plaintiff and putative class members for all hours worked, including drive time to the first worksite;

(2)    Whether Defendants paid Plaintiff and putative class members all overtime wages they were owed;

(3)    Whether Defendants had a policy or practice of failing to take into account all compensation paid, to calculate their regular rates of pay;

(4)    Whether Defendants failed to authorize and permit Plaintiff and putative class members to take meal periods;

(5)    Whether Defendants failed to authorize and permit Plaintiff and putative class members to take rest periods;

3

**SECOND AMENDED CLASS ACTION COMPLAINT**

(6)     Whether Defendants failed to authorize and permit second meal periods and third rest periods when Plaintiff and putative class members worked over 10 hours in a day;

(7)     Whether Defendants failed to authorize and permit Plaintiff and putative class members to begin meal periods before the end of their fifth hour of work;

(8)     Whether as a result of Defendants' policies and practices Plaintiff's and putative class members received all wages, due and owing, at the time of their termination or separation; and

(9)     Whether Defendants provided Plaintiff's and putative class members with wage statements that complied with Labor Code section 226.

(c)     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the putative class.  The putative class also sustained damages arising out of Defendants' common course of conduct in violation of the law as complained of herein.  Plaintiff and all members of the putative class were non-exempt employees who were not paid for all hours worked and all overtime wages earned, did not receive all meal and rest periods, and were not reimbursed for the use of their personal cellphones.  Additionally, Defendants issued Plaintiff and all members of the putative class wage statements that did not comply with Labor Code section 226.  As a result, Plaintiff and each member of the putative class will have suffered the same type of harm and seek the same type of recovery based on the same legal theories.

(d)     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the members of the putative class.  For all relevant times, Plaintiff resided in California and worked for Defendants in California.  Moreover, Plaintiff is an adequate representative of the putative class as Plaintiff has no interests that are adverse to those of putative class members.  Additionally, Plaintiff has retained counsel who has substantial experience in complex civil litigation and wage and hour matters.

(e)     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of the controversy since individual joinder of all members of the putative

**SECOND AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

class is impracticable.  Class action treatment will permit a larger number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as damages suffered by each individual member of the class may be relatively small, the expenses and burden of the individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, and an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudication of such individualized litigation would be substantial.  Individualized litigation would also present the potential for inconsistent or contradictory judgments.

14.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## GENERAL ALLEGATIONS

15.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 14 as though fully set forth herein.

16.    Plaintiff worked for Defendants from approximately November 1, 2019, to October 2021, as an hourly, non-exempt employee.  Similarly situated employees also worked for Defendants as non-exempt, hourly employees.  Plaintiff and similarly situated employees did not work as office or administrative staff.  Rather, Plaintiff and similarly situated employees performed work in crews as laborers, apprentices, roofers, and/or flooring installers.  Defendants generally divide the type of work for non-office/administrative staff into two categories, either service or production.  Plaintiff performed work as a laborer and roofer in both the service and production department.  Plaintiff is informed and believes that the general worksite conditions are similar for those employed in the flooring department as any and all policies Defendant communicated to Plaintiff and similarly situated employees did not note any distinction or special exemptions for individuals depending on what department they worked in.  Defendant's policies and practices were always communicated as being generally applicable to all non-exempt employees and/or its field personnel.  For example, Defendants' handbook states the scope of employees it applies to is "Field Personnel" with no distinction among different categories of

**SECOND AMENDED CLASS ACTION COMPLAINT**

employees. Similarly, Defendants would issue policies that directly identified the scope of applicability to all similarly situated employees. For example, one such statement of applicability in Defendants' policy on non-overnight travel reads as follows: "This policy applies to all Non-Exempt Employees who visit one customer facility in a particular day (i.e. to perform Production and/or "28" Jobs). It also applies to Production Field Supervisors who visit more than one customer job site in a particular day." The policy goes on to define Non-Exempt Employees as "any Non-Exempt member of a roofing or flooring crew and the foreman on such a crew and other Non-Exempt Employees." Furthermore, Plaintiff worked all across California and the general working conditions complained of herein continued regardless of location. Locations Plaintiff worked include, but are not limited to, Shasta, Folsom, Modesto, Taft, Tracy, Stockton, Roseville, Fairfield, Lincoln, and Wheatland.

17. Plaintiff and similarly situated employees were regularly scheduled to work more than forty (40) hours per week. Plaintiff and similarly situated employees regularly worked five (5) to seven (7) days per week on production jobs and five (5) to six (6) days per week on service jobs. Plaintiff and similarly situated employees generally worked eight (8) to ten (10) hours per day on the job site. Including drive time from the first place Plaintiff and similarly situated employees were required to appear would increase these daily hours to approximately twelve (12) to fourteen (14) hours a per day or more. Defendants failed to pay Plaintiff and similarly situated employees for all hours spent driving for work purposes, including drive time from Defendants' Roseville location/shop, or the designated meet up location, to the job site. Plaintiff and similarly situated employees had to obtain materials and equipment necessary to complete their job tasks from Defendants' shop, or meet up location, and then transport these materials to various worksites across California on a weekly and/or daily basis. This time was supposed to be paid as travel time and/or zone pay or both, but Defendants failed to make these payments approximately 30%-40% of the time despite managers and/or supervisors telling Plaintiff and similarly situated employees to appear at these starting locations. For example, during the week of June 14, 2021, Plaintiff traveled approximately 3 hours from the designated meeting place, as defined in Defendant's policies, to a job site in Shasta, but these hours worked were not paid. Plaintiff worked on the jobsite for approximately 9.7 hours in addition to the travel time on that day. Thus, Defendant's policies and practices resulted in unpaid minimum wages and overtime.

18.     Additionally, Plaintiff and similarly situated employees earned remuneration in addition to their basic hourly rate, including, but not limited to, bonuses and zone pay.  Bonuses could be earned by Plaintiff and similarly situated employees regardless of whether they worked a production job or a service job.  The amount of the bonus was calculated based on the number of hours each job was scheduled to take, *i.e.* budgeted, and how far under that budgeted amount the job was able to be completed in.  For example, if a job was budgeted to take 5,000 hours, but Plaintiff and similarly situated employees working on the job finished it in 4,750 hours, each of those individuals would be entitled to a bonus of $1 per hour under ($250).  Defendants' zone pay policy specifically stated that it would be paid to Plaintiff and similarly situated employees regardless of whether they drove to a job site or rode as a passenger.  The amount paid via zone pay would vary based on the distance travelled, *e.g.* $0, $7.50, or $15.00, etc.  Defendants maintain a meal and rest period policy that expressly applies to all non-exempt employees, including those in roofing and flooring, and states any meal and rest period premiums are paid at regular time, not the regular rate of pay.

19.     The bonuses and zone pay were not properly accounted for when calculating Plaintiff's and similarly situated employees' regular rate of pay for overtime, sick leave, and meal and rest period premium purposes.  For example, Plaintiff was paid a $174 bonus during the 6/1/20 to 6/7/20 pay period.  The jobs Plaintiff and similarly situated employees worked on lasted 2-3 weeks or longer.  However, the amount paid for overtime on the paystub corresponding to this period ($11.00) does not even account for the amount of overtime hours worked during this period in which the bonus was paid, let alone the accumulation of overtime hours during the preceding weekly pay periods that the bonus was earned over (*e.g.* [$174 / 47.35]/2 = $1.84. $1.84 x 7.35 total overtime hours = $13.53).  The rest period premiums that Defendant's did pay were only paid at the basic rate of pay, not the modified rate of pay.  For example, during the pay period immediately preceding 6/1/20-6/7/20, there was a rest period premium paid only at the basic hourly rate at the time, despite the bonus being earned over this same period.  Similar instances occurred with the zone pay in, for example, the 7/6/20 to 7/12/20 pay period, 7/27/20 to 8/2/20 pay period, 8/24/20 to 8/30/20 pay period, and 9/14/20 to 9/20/20 pay period. The zone pay was also consistently underpaid both because it was often less than the contracted 'zone pay' rate or amounted to less than Plaintiff and similarly situated employees' hourly rate for all hours

7

worked.  Thus, Plaintiff and similarly situated employees are owed unpaid overtime, sick leave, and meal and rest period premiums.

20.    Defendants, further, did not authorize and permit Plaintiff and similarly situated employees to take a full, uninterrupted thirty (30) minute meal periods every five (5) hours and ten (10) minute rest periods every four (4) hours or major fraction thereof.  Defendants further did not authorize and permit Plaintiff and similarly situated employees a second meal break after working more than ten (10) hours, or a second or third rest period after working more than eight (8) and twelve (12) hours.  In fact, it was Defendants' expectation that Plaintiff and similarly situated employees would remain on call during break time while driving to and from the work site and while at the actual job site.  Plaintiff and similarly situated employees had to remain on site and on call on job sites for various safety issues (*e.g.* fire watch), inspections to be completed, and/or receiving of any onsite deliveries.  Additionally, many of the job sites required special access badges to be able to leave and return to the premises, but they regularly expired and/or were damaged from environmental elements related to the job sites (*e.g.* extreme heat on roofs) and Defendants would not procure replacements for extended periods of time.  For example, these issues occurred while Plaintiff worked on a jobsite at Primo Foods, but Plaintiff was not paid a meal or rest period premium for each day he worked on this jobsite.  Furthermore, Defendants' policy was to have foreman track time through the use of a mobile time app on a single cell phone, which rounded employee meal period times, resulting in the appearance of at least thirty minute meal periods when, in actuality, the actual time of the meal period was less than thirty (30) minutes.  Additionally, foreman would clock Plaintiff and similarly situated employees out without their knowledge, resulting in their being unable to take a full meal period because they would be required to begin working again within thirty (30) minutes from the original clock out.  A similar issue occurred at the end of the workday when employees were clocked out by a foreman, though continued to work.

21.    Finally, Defendants failed to reimburse Plaintiff and similarly situated employees for all expenses they incurred for work, including the use of their personal cellphones.  For instance, Plaintiff and similarly situated employees were required to use their personal phones to consistently communicate with office staff and management while at the work site or driving.  These calls and/or texts covered work issues such as job site access or directions, status of the work performed, sending

pictures to demonstrate job site conditions, and coordinating coverage if one of the crew members was absent and additional labor was needed. Defendants' managers and supervisors were aware of Plaintiff and similarly situated employees using their personal cell phones for these purposes because these managers would regularly initiate and/or respond these calls and/or text messages to Plaintiff and similarly situated employees on a weekly, sometime daily basis. Defendants' managers also required Plaintiff and similarly situated employees to call in to the office and/or their foreman Sunday afternoons and/or evenings to find out if they were scheduled to work the next day, where to they were required to meet, and what time they were required to meet. This took anywhere from ten (10) minutes to several hours depending on the day. Defendants failed to have any policy or practice to reimburse Plaintiff and similarly situated employees for such use. In fact, where Plaintiff had made requests for reimbursement before, Jeff Bushey, a Production Field Supervisor who was one of Plaintiff's supervisors, cursed at Plaintiff, told Plaintiff he was lucky to have a job, and that, if Plaintiff kept complaining about unreimbursed expenses, he would be on the unemployment line. Plaintiff estimates that approximately 50% to 75% of his total phone usage during his employment was for the work purposes identified here and his cell phone bill was approximately $83.00 a month.

22.    As a result of these practices, Defendants failed to provide Plaintiff and similarly situated employees with accurate wage statements. The wage statements did not accurately itemize Plaintiff's and similarly situated employees' total hours worked, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate, and the correct amount of gross and net wages earned, including meal and rest period premiums.

23.    At the time of Plaintiff's and similarly situated employees' termination and/or separation, Plaintiff and similarly situated employees had regular and overtime wages owing to them, meal and rest period premiums, and paid sick time. To date, Defendants have not paid Plaintiff and similarly situated employees these unpaid wages.

//

//

//

//

9

**SECOND AMENDED CLASS ACTION COMPLAINT**

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES
### (Non-UCL Class vs all Defendants)

24.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 23 as though fully set forth herein.

25.     During the period Plaintiff was employed by Defendants, Defendants were required to compensate Plaintiff at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8) hours per day and/or forty (40) hours per week, and two (2) times the regular rate of pay for hours worked in excess of twelve (12) hours per day. *See, e.g.*, IWC Wage Order No. 16, section (3)(A); Cal. Lab. Code §§ 510, 1194.

26.     Plaintiff and similarly situated employees worked in excess of eight (8) hours per day and/or forty (40) hours per week on several occasions while employed by Defendants.  However, Defendants failed to compensate Plaintiff and similarly situated employees for all overtime hours worked at 1.5x their regular rate of pay.

27.     Plaintiff and similarly situated employees were not exempt from overtime protections employees under the California Wage Orders and Labor Code.

28.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### SECOND CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES
### (Non-UCL Class vs. all Defendants)

29.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28 as though fully set forth herein.

30.     For the period preceding the filing of this Complaint, Defendants were required to compensate Plaintiff and similarly situated employees with at least California's applicable minimum for every hour worked.  *See* MW-Order 2019; IWC Wage Order, No. 16, section 4(A); Cal. Lab. Code § 1194.

//

**SECOND AMENDED CLASS ACTION COMPLAINT**

31.     Plaintiff was not exempt to the State's Minimum Wage Order.  Defendants aware of their obligation to pay the minimum wage for each hour worked but failed to do so.

32.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

### THIRD CAUSE OF ACTION
### MEAL PERIOD VIOLATIONS
### (Non-UCL Class vs. all Defendants)

33.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 32 as though fully set forth herein.

34.     An employer must provide an employee a meal period in accordance with the applicable Wage Order, and California Labor Code sections 226.7 and 512.

35.     California Labor Code sections 226.7 and 512 and IWC Wage Order No. 16, section 11(A) require an employer to provide an uninterrupted meal period of not less than thirty (30) minutes for each work period of more than five (5) hours.

36.     California Labor Code section 512 and Wage Order No. 16 section 11(B) further provide that employers may not employ employees for a work period for more than ten (10) hours per day without providing the employee with a second meal period of at least thirty (30) minutes. However, if the total hours worked is no more than twelve (12) hours, the second meal period may be waived so long as there was no waiver as to the first meal period.  Employees are entitled to one (1) hour of pay at their regular rate of compensation for each meal period not provided.

37.     Defendants employed Plaintiff and similarly situated employees for periods of more than five (5) hours without providing meal breaks of at least thirty (30) minutes or a second meal period of at least thirty (30) minutes when Plaintiff and similarly situated employees worked more than ten (10) hours in a day.  Defendants also failed to allow Plaintiff and similarly situated employees to take their first meal period before the completion of their fifth hour of work and failed to allow Plaintiff and similarly situated employees to take their second meal period before the completion of their tenth hour of work.  Plaintiff and similarly situated employees did not waive their rights to all meal periods throughout their employment.

---

**SECOND AMENDED CLASS ACTION COMPLAINT**

38.     Defendants further failed to pay Plaintiff and similarly situated employees the applicable meal period premiums for any such missed meal breaks.

39.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**FOURTH CAUSE OF ACTION**
**REST PERIOD VIOLATIONS**
**(Non-UCL Class vs. all Defendants)**

40.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 39 as though fully set forth herein.

41.     An employer must provide an employee a rest period in accordance with the applicable Wage Order and California Labor Code section 226.7.

42.     California Labor Code section 226.7 and Wage Order No. 16, section 12(A) require an employer to provide a rest period of not less than ten (10) minutes for each work period of more than four (4) hours or a major fraction thereof.

43.     Plaintiff alleges that Defendants failed to authorize and permit Plaintiff and similarly situated employees to take paid rest periods of at least ten (10) minutes for each work period that they worked more than four (4) hours or a major fraction thereof.

44.     Defendants further failed to pay Plaintiff and similarly situated employees the applicable rest period premiums for any such missed rest periods.

45.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

**FIFTH CAUSE OF ACTION**
**WAGE STATEMENT VIOLATIONS**
**(Non-UCL Class vs. all Defendants)**

46.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 45 as though fully set forth herein.

47.     Pursuant to California Labor Code section 226(a), an employer must provide an itemized statement to an employee, semimonthly or at the time of each payment of wages, showing:

12

*(1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.*

48.     Plaintiff alleges that Defendants intentionally and knowingly failed to provide an itemized statement or failed to provide an accurate and complete itemized statement showing the requirements set forth in California Labor Code section 226(a).  Specifically, Defendants did not accurately itemize all applicable hourly rates in effect during the pay period, all regular, overtime and double time hours worked and corresponding rates of pay, and gross and net wages earned.  The paystubs also did not accurately itemize Plaintiff's and similarly situated employees' total hours worked due to Defendants' failure to pay for all hours worked.  Plaintiff and similarly situated employees were not able to promptly and easily determine their total hours worked from their paystubs alone.  Additionally, Plaintiff and similarly situated employees suffered confusion over whether they received all wages owed and were prevented from effectively challenging information on their wage statements.

49.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

//

//

//

**SECOND AMENDED CLASS ACTION COMPLAINT**

1
2

## SIXTH CAUSE OF ACTION
## WAITING TIME PENALTIES
## (Non-UCL Class vs. all Defendants)

3      50.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 49 as though fully
4  set forth herein.

5      51.     An employer must pay an employee who is terminated all unpaid wages immediately
6  upon termination.  *See* Cal. Lab. Code § 201.

7      52.     An employer must pay an employee who resigns all unpaid wages within seventy-two
8  (72) hours of their resignation.  *See* Cal. Lab. Code § 202.

9      53.     Plaintiff and similarly situated employees did not receive all wages, including minimum
10 and overtime wages, meal and rest period premiums, or all sick leave pay owed at their termination or
11 within the required time after their separation from employment.

12      54.     An employer who willfully fails to pay an employee wages in accordance with California
13 Labor Code sections 201 and/or 202 must pay the employee a waiting time penalty of up to thirty (30)
14 days.  *See* Cal. Lab. Code § 203.

15      55.     Defendants knew of their obligation to pay Plaintiff's and similarly situated employees'
16 their final wages when their employment terminated.  Indeed, Defendants had knowledge that Plaintiff
17 and similarly situated employees were not paid for all hours worked, or paid the proper rate of pay for
18 all hours worked, because it was Defendants' practices that authorized these under payments and
19 Defendant had access to all of Plaintiff's and similarly situated employees time and employment records
20 demonstrating their entitlement to these wages and premiums.  Such conduct shows Defendants had
21 knowledge of earned, but unpaid wages at the time of separation, yet Defendants still refused to pay the
22 remaining wages owed.

23      56.     As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees
24 have been damaged and deprived of their wages and thereby seek their daily rate of pay multiplied by
25 thirty (30) days for Defendants' failure to pay all wages due.

26 //

27 //

28 //

## SECOND AMENDED CLASS ACTION COMPLAINT

1
2

**SEVENTH CAUSE OF ACTION**
**FAILURE TO REIMBURSE EXPENSES**
**(Non-UCL Class vs. all Defendants)**

3      57.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 56 as though fully
4  set forth herein.

5      58.    California Labor Code section 2802(a) states that "An employer shall indemnify his or
6  her employee for all necessary expenditures or losses incurred by the employee in direct consequence of
7  the discharge of his or her duties, or of his or her obedience to the directions of the employer, even
8  though unlawful, unless the employee, at the time of obeying the directions, believed them to be
9  unlawful."

10     59.    Defendants required Plaintiff and similarly situated employees to use their personal
11 phones and tools for work purposes but failed to reimburse them for such use.  Further, while on out-of-
12 town jobs, Defendants failed to properly reimburse Plaintiff and similarly situated employees for their
13 meals.

14     60.    As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees
15 have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to
16 the extent pertinent as if set forth here in full.

17
18

**EIGHTH CAUSE OF ACTION**
**UNFAIR COMPETITION**
**(UCL Class vs. all Defendants)**

19     61.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 60 as though fully
20 set forth herein.

21     62.    Unfair competition shall mean and include any unlawful, unfair or fraudulent business act
22 or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1
23 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.  *See*
24 California Business and Professions ("B&P") Code § 17200.

25     63.    Plaintiff and similarly situated employees were not paid all sick leave wages owed during
26 their employment or any time thereafter.  Plaintiff lacks an adequate remedy at law for this violation
27 because there is no private right of action for any violation of California Labor Code section 245 *et. seq.*

28

15
**SECOND AMENDED CLASS ACTION COMPLAINT**

Instead, an individual is statutorily limited to only recovering equitable remedies, including restitution, under the statute.

64.    Plaintiff further alleges that such actions and/or conduct constitute a violation of the California Unfair Competition Law ("UCL") (Business and Professions Code 17200, *et seq.*) pursuant to *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000).

65.    As a direct and legal result of the Defendants' conduct, as alleged herein, pursuant to the UCL (including B&P Code §17203), Plaintiff and similarly situated employees are entitled to restitution, including, but not limited to, interest and penalties pursuant to Business & Professions Code sections 17203, 17208, for violation of California Labor Code sections 245 *et seq.* all in an amount as yet unascertained but subject to proof at trial, for <u>four (4) years</u> from the initial filing of this Action.

## <u>NINTH CAUSE OF ACTION</u><br><u>PRIVATE ATTORNEYS GENERAL ACT</u><br><u>(As to all Defendants)</u>

66.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 65 as though fully set forth herein.

67.    Plaintiff has alleged to the Labor Commissioner that Defendants have violated the following provisions of the Labor Code in their dealings with Plaintiff and other similarly situated current and former employees:

- Violation of Labor Code §§ 510, 1194; IWC Wage Order 16, § 3 (Failure to Pay Overtime Wages)
- Violation of Labor Code §§ 1194, 1197.1; IWC Wage Order 16, § 4 (Failure to Pay Minimum Wages)
- Violation of Labor Code §§ 226.7, 512 and Wage Order No. 16, §§ 11(A) and 11(B) (Failure to Provide Meal Periods or Pay Premiums in Lieu Thereof)
- Violation of Labor Code § 226.7 and Wage Order No. 16, § 12(A) (Failure to Provide Rest Periods or Pay Premiums in Lieu Thereof)
- Violation of Labor Code §§ 226, 226.3 (Failure to Provide Accurate Wage Statements)
- Violation of Labor Code §§ 201-203, 256 (Failure to Pay Final Wages)
- Violation of Labor Code § 2802 (Failure to Pay Reimbursements for Expenses)

16

**SECOND AMENDED CLASS ACTION COMPLAINT**

- Violation of Labor Code §§ 558, 558.1 (Provisions Regulating Hours and Days of Work in Any Industrial Welfare Commission Order)
- Violation of Labor Code §§ 223, 225 (Failure to Pay Contract Wages and Unlawful Deductions)
- Violation of Labor Code §§ 226.3, 1174 (Failure to Maintain Accurate Records)

68. Plaintiff seeks civil penalties against Defendants as provided in the California Labor Code, or, if no civil penalty is provided, default penalties pursuant to California Labor Code section 2699(f)(2).

69. Plaintiff seeks these civil penalties from Defendants pursuant to California Labor Code sections 2699(a) and 2699.3.

70. As a proximate result of Defendants' conduct, Plaintiff and similarly situated employees have been damaged as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

## **DAMAGES**

WHEREFORE Plaintiff requests relief as follows:

1. A jury trial;

2. <u>As to the First Cause of Action:</u>

    a. Wages in an amount to be proven at trial;

    b. Interest for the wages due pursuant to California Labor Code section 1194;

    c. For reasonable attorney's fees and costs incurred pursuant to California Labor Code section 1194;

3. <u>As to the Second Cause of Action:</u>

    a. Wages in an amount to be proven at trial;

    b. Interest for the wages due pursuant to California Labor Code section 1194;

    c. For reasonable attorney's fees and costs incurred pursuant to California Labor Code section 1194;

    d. Liquidated damages pursuant to California Labor Code section 1194.2;

4. <u>As to the Third Cause of Action:</u>

**SECOND AMENDED CLASS ACTION COMPLAINT**

a.      Wages in an amount to be proven at trial;

b.      Attorney's fees, costs and interest pursuant to California Code of Civil Procedure section 1021.5;

5.      <u>As to the Fourth Cause of Action:</u>

a.      Wages in an amount to be proven at trial;

b.      Attorney's fees, costs and interest pursuant to California Code of Civil Procedure section 1021.5;

6.      <u>As to the Fifth Cause of Action:</u>

a.      Penalties as provided for in Labor Code section 226, including the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100.00) per employee for each violation in the subsequent pay periods, but not to exceed four thousand dollars ($4,000.00);

b.      For reasonable attorney's fees and costs incurred pursuant to Labor Code section 226(e);

7.      <u>As to the Seventh Cause of Action:</u>

a.      An amount to be proven at trial;

b.      For attorney's fees, interest, and costs pursuant to Labor Code section 2802(c);

8.      <u>As to the Ninth Cause of Action:</u>

a.      For civil penalties as provided in the Labor Code for each enumerated violation;

b.      For those Labor Code sections where there is no civil penalty provided for their violation, the default penalty provided in Labor Code section 2699(f): for any initial violation, one hundred dollars ($100) for each aggrieved employee per pay period; For any subsequent violation, two hundred dollars ($200) for each aggrieved employee per pay period;

c.      Reasonable attorney's fees and costs pursuant to Labor Code section 2699;

**SECOND AMENDED CLASS ACTION COMPLAINT**

d.    For any other remedies as allowed by law and/or deemed appropriate by the

Court;

9.    For such other and further relief as this Court may deem just and proper,

including, but not limited to:

a.    Wages as proved at trial;

b.    Injunctive and Declaratory relief;

c.    Attorney's fees and costs as provided for by law; and

d.    Interest.

Dated: October 7, 2022                                    **Shimoda & Rodriguez Law, PC**

By: _____
        Galen T. Shimoda
        Justin P. Rodriguez
        Attorneys for Plaintiff

19

**SECOND AMENDED CLASS ACTION COMPLAINT**

*Lingle v. Centimark Corporation*
*Eastern District of CA, Case No. 2:22-CV-01471-JDP*

## PROOF OF SERVICE — F.R.C.P., Rule 5

I, Elias Tapia, declare that:

I am a citizen of the United States and am over the age of eighteen years and not a party to the within above-entitled action.

On October 7, 2022, I served the following documents on the party below:

- SECOND AMENDED COMPLAINT FOR DAMAGES

| | |
|---|---|
| Michael J. Nader (SBN 200425)<br>Paul M. Smith (SBN 306644)<br>Danielle Ocs (SBN 178677)<br>OGLETREE DEAKINS NASH SMOAK &<br>STEWART, P.C.,<br>500 Capitol Mall, Suite 2500<br>Sacramento, CA 95814<br>Telephone: (916) 840-3150<br>Facsimile: (916) 840-3159<br>Email: paul.smith@ogletree.com<br>      Michael.Nader@ogletreedeakins.com<br>      maria.davis@ogletreedeakins.com<br>      noreen.witt@ogletreedeakins.com | |

[    ]    [By Mail] I am familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service and that each day's mail is deposited with the United States Postal Service that same day in the ordinary course of business. On the date set forth above, I served the aforementioned document(s) on the parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing on this date, following ordinary business practices, at Elk Grove, California, addressed as set forth above.

[    ]    [By Personal Service] By personally delivering a true copy thereof to the office of the addressee above.

[XXX]    [By Electronic Mail] I e-mailed the documents(s) to the person(s) shown above. No error was reported by the e-mail service that I used.

[    ]    [By Overnight Courier] By causing a true copy and/or original thereof to be personally delivered via the following overnight courier service: UPS.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 7, 2022, at Elk Grove, California

_____
Elias Tapia

**PROOF OF SERVICE**