1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Anthony Lingle,                          No. 2:22-cv-01471-KJM-JDP

12                        Plaintiff,           ORDER AND RULE 16
                                               SCHEDULING ORDER
13          v.

14    Centimark Corporation, et al.,

15                        Defendants.

16

17          Plaintiff Anthony Lingle asserts several wage and hour claims against his former

18    employer, defendant Centimark Corporation, and he seeks to represent a class of similarly

19    situated workers.  Centimark moves to dismiss under Rule 12(b)(6) and to strike under Rule 12(f).

20    As explained in this order, the court **converts** the motion to strike to a motion to dismiss under

21    Rule 12(b)(6).  So construed, the motions are **granted in part with leave to amend**.

22    **I.      BACKGROUND**

23          At this stage, the court assumes the allegations in Lingle's complaint are true.  *Ashcroft v.*

24    *Iqbal*, 556 U.S. 662, 679 (2009).  According to his complaint, Lingle worked as a laborer and

25    roofer for Centimark between 2019 and 2021.  Second Am. Compl. ¶ 16, ECF No. 16.  He was

26    regularly scheduled to work more than forty hours a week, often as many as twelve to fourteen

27    hours a day.  *Id.* ¶ 17.  But Centimark routinely withheld or miscalculated his overtime

28    compensation, supervisors prevented him from taking mandatory breaks, and Centimark refused

1

to reimburse expenses Lingle incurred on his personal phone bill from work calls and text messages. *Id.* ¶¶ 18–21. As a result of these failures, his wage statements were inaccurate, and some wages went unpaid. *Id.* ¶¶ 22–23.

Lingle filed a complaint against Centimark in Sacramento County Superior Court a few months after he left the company. *See* Compl., Not. Removal Ex. A-2, ECF No. 1-1. He asserted wage and hour claims under California Labor Code, including for unpaid overtime, wages below the legal minimum, wrongfully withheld meal and rest breaks, inaccurate wage statements, and unfair competition, among others. *See generally id.* After an amendment to the complaint, *see generally* First Am. Compl., Not. Removal Ex. A-8, ECF No. 1-2, Centimark removed the case to this court in August 2022 under the Class Action Fairness Act, *see generally* Not. Removal, ECF No. 1. The operative complaint includes nine claims:

1. Failure to pay overtime wages under California Labor Code sections 510 and 1194, Second Am. Compl. ¶¶ 25–28;

2. Failure to pay minimum wages under Labor Code section 1194, *id.* ¶¶ 29–32;

3. Failure to offer meal breaks under Labor Code sections 226.7 and 512, *id.* ¶¶ 33–39;

4. Failure to offer rest breaks under Labor Code section 226.7, *id.* ¶¶ 40–45;

5. Wage statement violations under Labor Code section 226(a), *id.* ¶¶ 46–49;

6. Penalties for delayed wages after the end of employment under Labor Code sections 201, 202, and 203, *id.* ¶¶ 50–56;

7. Failure to reimburse business expenses under Labor Code section 2802(a), *id.* ¶¶ 57–60;

8. Unfair competition under Business & Professions Code sections 17200, 17203, and 17208, *id.* ¶¶ 61–65; and

9. A representative claim under the Private Attorneys General Act (PAGA), *id.* ¶¶ 66–70.

Lingle's experience was similar to that of other employees. *See id.* ¶ 16. He seeks to represent two classes of hourly employees: one asserting the first seven claims under the Labor Code, and one asserting the eighth claim for unfair competition. *Id.* ¶¶ 12–14. The PAGA claim is representative by nature, so Lingle does not seek to assert it on behalf of any class. *See id.*

2

1    ¶ 68; Cal. Lab. Code § 2699(f)(2).  He seeks damages, civil penalties, injunctive and declaratory

2    relief, fees, and costs, among other things.  *See* Second Am. Compl. at 17–19.

3         Centimark moves to dismiss the third, fourth, fifth, sixth, seventh, and eighth claims under

4    Federal Rule of Civil Procedure 12(b)(6).  *See* Mot. at 6–14.  It also moves to strike several

5    portions of the complaint under Rule 12(f), including portions of the PAGA claim.  *Id.* at 15–20.

6    Like the motion to dismiss, the motion to strike rests on legal arguments.  For example,

7    Centimark urges the court to strike the complaint's allegations about paid sick leave because there

8    is no private right of action to enforce the Labor Code's sick leave provisions, *see id.* at 15–17,

9    and it asks the court to strike Lingle's PAGA claim in part based on its interpretation of the

10   underlying Labor Code protections, *see id.* at 17–19.

11        Rule 12(f) is meant to avoid unnecessary expenditures of time and money over "spurious

12   issues," not to test legal claims.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th

13   Cir. 2010) (citation and quotation marks omitted).  But because motions to strike under Rule 12(f)

14   and motions to dismiss for failure to state a claim under Rule 12(b)(6) resemble one another as far

15   as evidentiary standards and proof are concerned, district courts occasionally convert 12(f)

16   motions to 12(b)(6) motions.  *See, e.g.*, *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146

17   (E.D. Cal. 2010); *see also Whittlestone*, 618 F.3d at 975 n.2 (evaluating pleading alternatively

18   under Rule 12(b)(6)).  The parties will suffer no prejudice if Centimark's motion to strike is

19   converted to a motion to dismiss for failure to state a claim.  The court therefore converts

20   Centimark's motion to strike to a motion to dismiss under Rule 12(b)(6).

21        The court took these motions under submission after hearing oral arguments over

22   videoconference on February 17, 2023.  Mins., ECF No. 35.  Justin Rodriguez appeared for

23   Lingle, and Michael Nader appeared for Centimark.  After oral arguments, Lingle submitted a

24   notice of the California Court of Appeal's intervening decision in *Wood v. Kaiser Foundation*

25   *Hospitals*, 88 Cal. App. 5th 742 (2023), which interpreted relevant provisions of the Labor Code

26   and Unfair Competition Law.  *See* Not. Suppl. Auth., ECF No. 36.

## II.   LEGAL STANARD

A motion to dismiss under Rule 12(b)(6) may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Iqbal*, 556 U.S. at 679.

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.* (citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

The Ninth Circuit has specified how district courts should apply this standard to claims about uncompensated work like those at issue in this case.  *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641–46 (9th Cir. 2014).  It does not require plaintiffs to "approximate the number of hours worked without compensation" or allege how much is owed "with mathematical precision."  *Id.* at 646 (citation and quotation marks omitted).  But the Circuit has agreed with three other courts of appeal "that, at a minimum, a plaintiff . . . must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week."  *Id.* at 645.

This court recently declined "to read *Landers* as requiring plaintiffs to identify a specific date or time frame for which they were deprived of overtime pay, minimum wages, a meal break, or a rest break."  *Turner v. LTF Club Mgmt. Co., LLC*, No. 20-0046, 2022 WL 1018498, at *5

(E.D. Cal. Apr. 5, 2022).  As this court explained in *Turner*, the Ninth Circuit did not describe its decision in *Landers* as creating any more demanding or "heightened" standard for wage and hour claims, the Circuit has not interpreted *Landers* as demanding specific dates in any later decisions, and the persuasive authority the Ninth Circuit relied on in *Landers* did not demand specific dates. *See id.* at *3–6.  To be sure, a plaintiff could ensure its claims would withstand a motion to dismiss by detailing specific weeks or days, but dates are not the only sufficient facts that might show a plaintiff "is entitled to relief" under the California Labor Code. *See id.* at *4–5.

## III. DISCUSSION

### A. Meal and Rest Breaks (Claims 3 and 4)

Centimark first moves to dismiss Lingle's third and fourth claims.  He alleges Centimark did not offer him and others meal and rest breaks as required by the California Labor Code. *See* Second Am. Compl. ¶¶ 33–45 (citing Cal. Lab. Code §§ 226.7, 512).  He alleges Centimark expected him and his colleagues to be on call, remain on the job site, complete inspections and safety checks and receive deliveries all during their breaks. *See id.* ¶ 20.  He identifies one jobsite in particular. *See id.*  He also alleges supervisors tracked breaks with a mobile app that sometimes rounded break times up to the required length, when in they were in fact shorter. *Id.*  Supervisors similarly clocked employees out for their breaks without telling them and while they were still working, which meant employees started breaks late and did not have all the time they deserved. *Id.*

These allegations suffice under this court's interpretation of the legal standard in *Landers*.  They are similar to those the Circuit relied on in its unpublished decision in *Boon v. Canon Business Solutions, Inc.* and to those the plaintiff advanced in *Turner*. *See* 2022 WL 1018498, at *4 & n.2 (citing examples of sufficient allegations from complaint the Ninth Circuit found sufficient in *Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631 (9th Cir. 2015) (unpublished)).  Lingle offers more than generic claims about what was ordinarily done and the work environment, in contrast to the claims justifying dismissals in the cases Centimark cites. *See, e.g.*, *Perez v. DNC Parks & Resorts at Sequoia*, No. 19-0484, 2020 WL 4344911, at *8 (E.D. Cal.

5

1    July 19, 2020); *Wyland v. Berry Petroleum Co., LLC*, No. 18-01414, 2019 WL 1047493, at *7–8

2    (E.D. Cal. Mar. 5, 2019).  The court **denies** the motion to dismiss claims three and four.

3         **B.      Wage Statement Penalties (Claim 5)**

4    Lingle next alleges Centimark gave its employees inaccurate wage statements in violation of

5    California Labor Code section 226(a).  Second Am. Compl. ¶¶ 46–49.  This claim is essentially

6    derivative of the claims for minimum wages, unpaid overtime, and meal and rest breaks.  That is,

7    Lingle claims Centimark's wage statements were inaccurate because they underreported the hours

8    worked and amounts due.  *See, e.g.*, *id.* ¶ 48 (alleging paystubs "did not accurately itemize

9    Plaintiff's and similarly situated employees' total hours worked due to Defendants' failure to pay

10   for all hours worked").  Centimark argues a wage statement does not violate section 226(a) just

11   because it accurately reports an underpayment, citing *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.

12   App. 5th 1308, 1336–37 (2018).  *See* Mot. at 10.  In *Maldonado*, the Court of Appeal rejected the

13   argument "that *any* failure to pay overtime at the appropriate rate *also* generates a wage statement

14   injury justifying the imposition of wage statement penalties."  *Id.* at 1336 (emphases in original).

15   It held a plaintiff must prove an inaccuracy or omission caused an injury.  *See id.* at 1336–37.

16        Last year, however, the California Supreme Court held that "extra pay for missed breaks"

17   are "wages that must be reported on statutorily required wage statements" under section 226 of

18   the Labor Code.  *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 102 (2022).  Although it

19   disagreed with arguments the Court of Appeal had found persuasive in *Maldonado*, *see id.* at 119,

20   the state Court distinguished *Maldonado* as a case about the absence of an injury, not misreported

21   wages, *see id.* at 120.  The state Court did not address whether the theory of injury in *Maldonado*

22   was valid, however, because the employee plaintiffs in *Naranjo* had "clearly suffered an injury."

23   *Id.*  Under section 226, an "injury has occurred whenever the employee cannot easily

24   determine . . . rates of pay and all hours worked at each rate."  *Id.* (citation and marks omitted).

25   As another judge of this court recently explained, the California Supreme Court's decision in

26   *Naranjo* "eliminates the anticipated defense that, as a matter of law, non-payment of meal and

27   rest break premiums cannot form the basis of derivative claims" under section 226.  *Almanzar v.*

28   *Home Depot U.S.A., Inc.*, No. 20-0699, 2022 WL 2817435, at *12 (E.D. Cal. July 19, 2022).  In

1    that way, the California Supreme Court's decision in *Naranjo* "recognizes that *Maldonado* never

2    supported that interpretation [of section 226] in the first place." *Id.*

3          Given the potential conflict between *Maldonado* and *Naranjo*, this court must

4    "approximate state law as closely as possible." *High Country Paving, Inc. v. United Fire & Cas.*

5    *Co.*, 14 F.4th 976, 978 (9th Cir. 2021) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931,

6    939 (9th Cir. 2001)). The decisions of a state's highest court are binding. *Vestar Dev. II, LLC v.*

7    *Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). In the absence of a controlling decision

8    by the state's highest court, a federal district court must follow any relevant decisions by the

9    state's intermediate appellate courts "unless the federal court finds convincing evidence that the

10   state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d

11   993, 994 (9th Cir. 2007).

12         On the one hand, the California Supreme Court has not decided expressly whether

13   derivative meal and rest break claims are viable as a matter of law under section 226(a) of the

14   Labor Code. The Court of Appeal's decision in *Maldonado* suggests they are not, and

15   *Maldonado* has not formally been overruled. On the other hand, however, the California

16   Supreme Court's decision in *Naranjo* implies strongly that derivative meal and rest break claims

17   are viable. Under *Naranjo*, an "injury has occurred whenever the employee cannot easily

18   determine certain required information" from a wage statement, such as hours worked and

19   amount due. 13 Cal. 5th at 120. For that reason, the California Supreme Court would likely

20   disagree with Centimark that derivative claims wrongfully allow double recoveries. *See* Mot. at

21   10. Otherwise that Court would have barred the claim at issue in *Naranjo* as duplicative.

22   Because Lingle's paystubs did not accurately itemize the total hours worked, the state Court

23   would most likely conclude Lingle was deprived of "information needed to evaluate whether the

24   payment is correct." *Naranjo*, 13 Cal. 5th at 120. Centimark cites no case decided after *Naranjo*

25   suggesting otherwise, nor has this court located any such case.

26         In short, *Naranjo* is "convincing evidence" that the California Supreme Court would

27   conclude Lingle's fifth claim does not seek an impermissible double recovery. *Ryman*, 505 F.3d

28   at 994. The court **denies** the motion to dismiss claim five.

1      **C.**     **Waiting Time Penalties (Claim 6)**

2      In Lingle's sixth claim, he alleges Centimark did not pay him and other similarly situated

3      employees the wages they were due at the time their employment ended.  He relies on California

4      Labor Code sections 201, 202 and 203.  *See* Second Am. Compl. ¶¶ 50–56.  Under section 201,

5      "wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Lab.

6      Code § 201(a).  Under section 202, wages "become due and payable not later than 72 hours" after

7      an employee resigns.  *Id.* § 202(a).  And under section 203, if an employer "willfully fails to

8      pay . . . any wages of an employee who is discharged or who quits, the wages of the employee

9      shall continue as a penalty from the due date thereof at the same rate until paid or until an action

10      therefor is commenced," for up to thirty days.  *Id.* § 203(a).

11      Centimark first argues this claim should be dismissed as dependent on Lingle's allegations

12      about rest and meal breaks, which Centimark argues in turn fall short of the pleading standard

13      described in *Landers*.  The court disagrees for the reasons in section III.A. above.  Second, and

14      similarly, Centimark faults the operative complaint for not specifying the exact date Lingle left

15      the company, for not alleging specifically whether he was fired or resigned, and for not alleging

16      when he received his final paycheck.  *See* Mot. at 11.  These details are not necessary.  The

17      complaint permits the court to infer that if Lingle can prove his allegations, he and others could

18      plausibly be entitled to penalties under sections 201, 202, or 203: (1) he alleges Centimark paid

19      him and others less than the minimum wage, did not pay overtime, and did not offer meal and rest

20      breaks, *see* Second Am. Compl. ¶¶ 17–21; he alleges he ended his employment in October 2021,

21      *see id.* ¶ 16; and he alleges Centimark did not pay wages he had earned, but which had gone

22      unpaid, within thirty days of October 2021, *id.* ¶ 55.

23      Centimark also argues that because there is no private right of action to enforce the Labor

24      Code's paid sick leave protections, the court should not permit Lingle to assert waiting time

25      claims based on allegations about unpaid sick leave.  *See* Mot. at 15–16.  Similarly, Centimark

26      argues the state legislature intended for only the California Attorney General and Labor

27      Commissioner to enforce the state's paid sick leave rules.  *See id.* at 16–17.  The complaint does

28      not assert violations of any Labor Code provisions guaranteeing sick leave.  Lingle instead seeks

1   statutory penalties for unpaid wages, some earned as sick pay.  *See* Second Am. Compl. ¶ 53.  As

2   another judge of this court has persuasively explained, "sick pay" is a form of "wages" and

3   "regular compensation" under the relevant California law, so a plaintiff may pursue a penalties

4   claim under section 203 if an employer has withheld sick pay.  *Flores v. Dart Container Corp.*,

5   No. 19-00083, 2020 WL 2770073, at *2–3 (E.D. Cal. May 28, 2020).  The amount of these

6   penalties is a question of damages and proof, so the court declines to require specific allegations

7   about amounts, dates of sick leave and the like.  *See Landers*, 771 F.3d at 641–46 (declining to

8   require mathematical precision in complaint).

9        The court **denies** the motion to dismiss claim six.

10       **D.    Business Expenses (Claim 7)**

11       In claim seven, Lingle alleges Centimark has wrongly withheld reimbursements for

12   business expenses.  Under California law, an employer must "indemnify his or her employee for

13   all necessary expenditures or losses incurred by the employee in direct consequence of the

14   discharge of his or her duties, or of his or her obedience to the directions of the employer," with

15   exceptions not relevant here.  Cal. Lab. Code § 2802(a).

16       Lingle alleges Centimark required him and others to use their personal cell phones for

17   work while they were on the jobsite and while they were driving to a jobsite.  Second Am.

18   Compl. ¶ 21.  He was required to answer calls and respond to texts about access to jobsites,

19   directions, status updates, site conditions and scheduling.  *Id.*  Centimark also required Lingle and

20   others to call the office or a supervisor on their days off using their personal phones to find out

21   whether and when they were scheduled to work.  *Id.*  This exercise could last ten minutes, or it

22   could take several hours.  *Id.*  Lingle believes more than half of his phone use was devoted to

23   work calls and texts during his time at Centimark, which would translate to more than $80 per

24   month in unreimbursed costs.  *Id.*  He also alleges that when he requested a reimbursement from a

25   supervisor, the supervisor cursed at him and threatened to fire him.  *Id.*  These allegations state a

26   claim for indemnification under the plain language of section 2802(a).  *See, e.g.*, *Kajberouni v.*

27   *Bear Valley Cmty. Servs. Dist.*, No. ___ F. Supp. 3d ___, No. 19-1703, 2022 WL 17094604, at

1   *4–5 (E.D. Cal. Nov. 21, 2022) (denying motion to dismiss claims under § 2802 based on similar

2   factual allegations).

3        In its reply, Centimark argues Lingle cannot rely on allegations about time he spent

4   checking his schedule, but it cites a case discussing the Fair Labor Standards Act and whether

5   time is compensable.  *See* Reply at 5 (citing *Ino v. Gap, Inc.*, No. 14-292, 2014 WL 12776370, at

6   *1 (N.D. Cal. July 28, 2014)).  This claim is not about compensable time, but rather unreimbursed

7   expenses.

8        The court **denies** the motion to dismiss claim seven.

9        **E.      Unfair Competition (Claim 8)**

10       In Lingle's eighth claim, he alleges Centimark did not pay "sick leave wages" under

11  California Labor Code section 245 and the sections that follow, and he claims this failure was an

12  "unlawful, unfair, or fraudulent business act or practice" under the California Unfair Competition

13  Law.  *See* Second Am. Compl. ¶¶ 61–65 (citing Cal. Bus. & Prof. Code §§ 17200, 17203, 17208).

14  Lingle does not allege, however, that Centimark refused to pay for any particular period of sick

15  leave, and the complaint refers to his sick leave claims only generically.  *See, e.g.*, *id.* ¶ 19

16  (alleging "bonuses and zone pay were not properly accounted for when calculating . . . sick

17  leave").   The court cannot infer from these broad allegations that Centimark acted unlawfully,

18  unfairly, or fraudulently under section 17200.  The court **grants** the motion to dismiss this claim.

19  *See, e.g.*, *Hassell v. Uber Techs., Inc.*, No. 20-4062, 2020 WL 7173218, at *9 (N.D. Cal. Dec. 7,

20  2020) (dismissing similar unfair competition claim for similar lack of supporting allegations on

21  sick leave).

22       Ordinarily, a court should freely permit amendments to correct defects and fill in missing

23  factual allegations.  *See, e.g.*, *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1035 (9th Cir.

24  2014).  A court may dismiss without leave to amend if amendment would be futile.  *Hooper v.*

25  *Shinn*, 985 F. 3d 594, 622 (2021), *cert. denied*, 142 S. Ct. 1376 (2022).  Centimark puts forward

26  two arguments to show amendments would be futile, but neither is persuasive.

27       First, Centimark argues Lingle cannot rely on violations of California Labor Code section

28  246 to prove any "unlawful" practices under the Unfair Competition Law because that section

1   does not include a private right of action.  *See* Mot. at 12–13.  As Lingle correctly points out,

2   however, plaintiffs can bring claims for "unlawful" business practices under the Unfair

3   Competition Law even if the statute that makes the practice "unlawful" does not itself create a

4   private right of action.  *See* Opp'n at 9 (citing *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th

5   1439, 1447 n.4 (2013)).  The California Court of Appeal has held private plaintiffs can seek relief

6   under the Unfair Competition Law based on alleged sick leave violations.  *See Wood*,

7   88 Cal. App. 5th at 749 (citing Cal. Lab. Code § 248.5).

8          Second, Centimark argues Lingle cannot pursue an unfair competition claim because he

9   has an adequate remedy at law.  *See* Mot. at 13–14; *see also Sonner v. Premier Nutrition Corp.*,

10  971 F.3d 834, 844 (9th Cir. 2020) ("[A plaintiff] must establish that she lacks an adequate remedy

11  at law before securing equitable restitution for past harm under the [Unfair Competition

12  Law] . . . .").  Employees may report sick leave violations to regulators, who can bring civil

13  actions against the employer, and Centimark argues this alternative remedy is adequate.  *See* Mot.

14  at 13–14.  At least one California federal district court has held that an employee cannot pursue

15  equitable remedies related to unpaid sick leave without alleging why administrative enforcement

16  is inadequate.  *See Hassell*, 2020 WL 7173218, at *10.

17         A legal remedy is "adequate" only if it is at least as "prompt and certain" as the equitable

18  remedy and "without impediment."  *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).  In

19  *Hassell*, the district court did not consider whether an administrative enforcement action is as

20  "prompt" or "certain" or as free of "impediment" as an equitable claim for unfair competition.

21  *See Hassell*, 2020 WL 7173218, at *10.  Lingle argues an administrative remedy is not as prompt

22  or certain as an equitable claim, for example because regulators do not have resources to

23  investigate and pursue every possible violation.  *See* Opp'n at 11.  He also points out state law

24  merely permits regulators to enforce the state's sick leave provisions.  *See id.*  The court cannot

25  exclude the possibility Lingle could properly allege, in a further amended complaint, why the

26  Unfair Competition Law would offer a more prompt and certain remedy than an enforcement

27  action under Labor Code section 246, or otherwise show a regulatory action against Centimark

28  would face impediments.

1    For these reasons, Centimark has not shown an amendment would be futile.  The court

2    **grants with leave to amend** the motion to dismiss claim eight.

3        **F.    PAGA (Claim 9)**

4    Centimark argues the PAGA claim should be dismissed to the same extent it rests on

5    claims Lingle advances directly on his own behalf.  The court has denied Centimark's motion to

6    dismiss the direct claims, with the exception of claim eight, which asserts claims under the Unfair

7    Competition Law.  But the complaint does not seek relief under the PAGA based on violations of

8    the Unfair Competition Law.  *See* Second Am. Compl. ¶ 67.  For these reasons, the court will not

9    dismiss the PAGA claim based on any failures in the direct allegations supporting Lingle's

10   preceding claims.

11   Centimark moves also to dismiss Lingle's PAGA claim to the extent it is based on

12   California Labor Code section 223.  Mot. at 17–19; *see also* Second Am. Compl. ¶ 67 (citing

13   California Labor Code section 223 and referring to "Failure to Pay Contract Wages and Unlawful

14   Deductions").  Under section 223, if a "statute or contract requires an employer to maintain the

15   designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay

16   the wage designated by statute or by contract."  Cal. Lab. Code § 223.  "[S]ection 223 was

17   enacted to address the problem of employers taking secret deductions or 'kickbacks' from their

18   employees."  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1205 (2008).  It does not

19   apply in most wage disputes.  *See Stoetzl v. Dep't of Hum. Res.*, 7 Cal. 5th 718, 752 (2019)

20   (distinguishing claims for unpaid work from claims under section 223).  No allegations in the

21   Second Amended Complaint permit the court to infer Centimark and its employees agreed to a

22   kickback scheme or another similar arrangement.

23   Lingle argues a kickback scheme is unnecessary, citing *Gonzalez v. Downtown LA

24   Motors, LP*, 215 Cal. App. 4th 36, 50–51 (2013).  *See* Opp'n at 14.  The dispute in *Gonzalez*

25   concerned a unique piece-rate payment scheme.  The Court of Appeal's analysis turned on the

26   specifics of that scheme.  *See* 215 Cal. App. 4th at 50.  Lingle does not allege Centimark used a

27   similar scheme.  And regardless of what the Court of Appeal held in 2013, the California

28   Supreme Court held in 2019 that section 223 is concerned only with "hidden or deceptive"

12

1   practices. *Stoetzl*, 7 Cal. 5th at 752.  Lingle identifies none.  The court **grants** the motion to

2   dismiss this portion of the PAGA claim **with leave to amend**, if possible within the confines of

3   Federal Rule of Civil Procedure 11.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th

4   Cir. 2002) ("[I]n the normal course district courts should freely grant leave to amend when a

5   viable case may be presented.").

6          Finally, Centimark argues Lingle cannot pursue a PAGA claim based on Labor Code

7   section 226.3.  Under that section, an employer is subject to additional civil penalties if it "fails to

8   provide the employee a wage deduction statement or fails to keep the records required in

9   subdivision (a) of Section 226."  Cal. Lab. Code § 226.3.  The court agrees Lingle's allegations

10  do not support claims for penalties under section 226.3.

11         In 2021, the California Court of Appeal held that additional penalties can be imposed

12  under section 226.3 only if "the employer either fails to provide a wage statement or fails to keep

13  required records," not "for *any* violation of section 226(a)," such as an incomplete or inaccurate

14  statement.  *Gunther v. Alaska Airlines, Inc.,* 72 Cal. App. 5th 334, 354 (2021) (emphasis in

15  original).  The Court of Appeal expressly disagreed with a contrary interpretation by a different

16  district of the Court of Appeal, which had held a few years before that section 226.3 applies to

17  "*all* violations of section 226."  *Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th

18  667, 675 (2018) (emphasis in original).  In *Raines*, the court held that if section 226.3 penalties

19  were limited to cases in which employers provided no statements at all, then regulators could not

20  seek civil penalties "for a grossly inadequate wage statement."  *Id.*  "[T]he purpose of the statute

21  would be thwarted."  *Id.*  As the Court of Appeal pointed out in *Gunther*, the decision in *Raines*

22  rests on a false dilemma.  In the case of an incomplete or inaccurate statement, the choice is not

23  between penalties under 226.3 and no penalties at all, but rather between the standard penalty and

24  a heightened penalty.  *See* 72 Cal. App. 5th at 354.

25         The California Supreme Court has not resolved this disagreement, but it is more likely to

26  adopt the reasoning in *Gunther*.  If the legislature had intended for heightened penalties to be

27  available every time an employer fell short of section 226(a), it could have said so.  72 Cal. App.

28  5th at 354.  Instead, it imposed heightened penalties only when an employer "fails to provide the

1  employee a wage deduction statement or fails to keep the records required." Cal. Lab. Code

2  § 226.3.

3      Lingle does not allege Centimark provided no wage statements at all or failed to keep

4  required records. He alleges Centimark gave employees incomplete and inaccurate statements.

5  The court **dismisses** his claim for penalties under section 226.3 **with leave to amend**, if possible

6  within the confines of Federal Rule of Civil Procedure 11.

7  **IV.   CONCLUSION AND RULE 16 SCHEDULE**

8      The court construes the motion to dismiss and to strike (ECF No. 17) as a motion to

9  dismiss only and **grants that motion in part with leave to amend**: claim eight is dismissed with

10  leave to amend; claim nine is dismissed in part with leave to amend as described in section III.F

11  above; and the court otherwise **denies** the motion.

12      After careful consideration of the parties' comments in their joint status report on

13  scheduling, the court orders as follows:

14      • Any further amended complaint must be filed **within twenty-one days**.

15      • Initial disclosures must be exchanged **within forty-five days**.

16      • Fact discovery related to class certification shall be completed by **October 4,**

17      **2024**.

18      • Initial expert disclosures related to class certification shall be exchanged by

19      **November 1, 2024**.

20      • Rebuttal expert disclosures related to class certification shall be exchanged by

21      **December 6, 2024**.

22      • All expert discovery related to class certification shall be completed by

23      **January 17, 2025**.

24      • Any motions for class certification or to preclude class certification must be heard

25      by **April 25, 2025**.

26      • The court will set further dates and deadlines following motion practice on class

27      certification.

14

1    Motions regarding discovery shall be noticed before the Magistrate Judge, as provided by

2  Local Rule 302(c).  The court declines to modify the default discovery limits imposed by the

3  Federal Rules of Civil Procedure at this time.  The parties may seek relief from the Magistrate

4  Judge if necessary and address discovery limits to this court if necessary following motion

5  practice on class certification.

6    After consideration of the parties' comments related to settlement, the parties are directed

7  to notify the court whether they request a court settlement conference date or referral to the

8  Voluntary Dispute Resolution Program (VDRP) **prior to any hearing on class certification**.

9  The parties shall file said notification or request for referral jointly, in writing.

10    This case schedule will become final without further order of the court unless objections

11  are filed **within fourteen calendar days** of this order.  The schedule, once final, shall not be

12  modified except by leave of court upon showing of good cause.  All provisions of the court's

13  standing scheduling order for Civil Cases filed concurrently herewith are incorporated therein.

14    IT IS SO ORDERED.

15  DATED:  April 14, 2023.

CHIEF UNITED STATES DISTRICT JUDGE