UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Lingle, | No. 2:22-cv-01471-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| Centimark Corporation, et al., | |
| Defendants. | |

Plaintiff Anthony Lingle has renewed his motion seeking the court's preliminary approval of the parties' agreement to settle this proposed class action. The court **grants** the motion, as explained below.

**I.   BACKGROUND**

Lingle alleges Centimark, his former employer, violated the California Labor Code and the state's Private Attorneys General Act (PAGA) by withholding wages from him and other employees, by misreporting wages on pay stubs and by depriving employees of the full rest and meal breaks required by law, among other similar claims. *See* Order (Apr. 17, 2023) at 1–2, 5–14, ECF No. 37. Lingle is pursuing his Labor Code claims on behalf of a proposed class, while his PAGA claims are, by nature, representative. *See id.* at 2.

The parties have reached an agreement to settle the case. *See* Not. Settlement, ECF No. 40. The settlement envisions payments to a class certified under Federal Rule of Civil

1

1   Procedure 23(b)(3) and to a group of employees who will receive settlement funds based on the
2   representative PAGA claims. *See* Order (Nov. 15, 2024) at 2, ECF No. 47. Under the agreement,
3   class members would be paid from a $600,000 "Gross Settlement Amount." *See id.* After
4   payments to the California Labor & Workforce Development Agency (LWDA), the class
5   administrator, attorneys' fees, costs and an incentive award paid to Lingle, about $255,000 of the
6   $600,000 would be distributed to members of the class. *See id.* at 2–3.

7         The court heard arguments on Lingle's unopposed motion to approve the agreement under
8   Federal Rule of Civil Procedure 23(e) and analogous state law in January 2024. Mins., ECF
9   No. 45. In November, the court found Lingle had demonstrated the proposed class was likely to
10  be certified, as required by Rule 23(e)(1)(B)(ii). *See* Order (Nov. 15, 2024) at 4–9. But based on
11  the record at the time, the court could not find it was "likely" to approve the proposed agreement
12  as "fair, reasonable, and adequate," which Rule 23(e)(2) requires. *See id.* at 9–14. The court
13  noted four shortcomings in its previous order. First, aside from a reference to the parties' private
14  mediation, Lingle did not cite evidence that could show the parties negotiated the agreement at
15  arm's length. *See id.* at 10–11 (citing Fed. R. Civ. P. 23(e)(2)(B)). Second, Lingle did not show
16  the proposed $200,000 attorneys' fee award was likely to be approved as fair and reasonable. *See*
17  *id.* at 11 (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)). Third, the settlement agreement allocated almost
18  as much money to costs and fees as to class members. *See id.* at 11–12. That ratio raised "the
19  possibility of a collusive agreement," which courts must be vigilant to prevent. *Id.* at 12 (citing *In*
20  *re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011)). And fourth, Lingle did not demonstrate "class
21  members will receive adequate compensation given the harms they allegedly suffered." *Id.* at 12.
22  The settlement award was "far lower than the values both Centimark and Lingle's counsel [had]
23  placed on his claims at different times in this case." *Id.* Lingle's counsel did explain why
24  damages after trial might be lower due to evidentiary and legal risks of continued litigation, but
25  counsel did not connect the lower estimate to the risks. *See id.* at 13–14. The estimates may very
26  well have been "guesswork." *Id.* at 14.

27        For these reasons, the court denied the motion for preliminary certification without
28  prejudice to renewal within thirty days. *See id.* Lingle renewed his motion before that deadline.

*See generally* Renewed Mot., ECF No. 48; Renewed Mem., ECF No. 48-1. It is again unopposed. The court took the matter under submission without holding a hearing.

## II.   CLASS CLAIMS

Before approving a proposal to settle claims on behalf of a class, the court must give notice to the people who would be members of that class, but only if the court first determines it "will likely be able to" both certify the class formally and conclude that the terms of the settlement are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B). Lingle has already demonstrated the proposed class is likely to be certified. *See* Order (Nov. 15, 2024) at 4–9. It is necessary now only to consider whether the materials attached to his renewed motion show the agreement also is likely to meet the requirements of Rule 23(e)(2)—that is, that the court is likely to find the settlement is:

> [F]air, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (listing similar factors developed by courts for deciding whether proposed settlement agreements are fair, reasonable and adequate).

3

1    The supplemental motion adds some information to the record to show the proposed agreement is fair, reasonable and adequate in response to the four concerns the court raised, but significant gaps still remain unfilled in the record.

First, the renewed motion does not add evidence to the record showing the parties negotiated at arm's length. The renewed motion largely reiterates arguments in the original motion, such as that negotiations were not collusive because "the parties had a clear view of the strengths and weaknesses of claims and defenses at issue," Renewed Mem. at 9; *see also* Orig. Mem. at 8–9, ECF No. 43-1 (same). The renewed motion also emphasizes a point this court previously recognized—that the assistance of a mediator can help to show negotiations were at arm's length, *see* Renewed Mem. at 9—which is not enough on its own. *See* Order (Nov. 15, 2024) at 11. Lingle's counsel does assert in a supplemental declaration that Centimark and its attorneys "aggressively contested each aspect of Plaintiff's claims" and that "[t]here was no collusion in any respect and all dealings have been at arm's length," but counsel offers no specifics to support these broad claims. Suppl. Rodriguez Decl. ¶ 8, ECF No. 48-2. The renewed motion also points out other features of the settlement agreement to show it is not a sweetheart deal for the defense, such as that "no portion of the Gross Settlement Amount will revert to Defendant for any reason" and that any fees the court does not approve will be paid to the class. *See* Renewed Mem. at 10. But these features do not show the negotiations themselves were at arm's length. Rule 23(e) lists arm's-length negotiations independently as a factor this court must consider. Evidence showing negotiations were at arm's length is an important part of ensuring that class counsel has not accepted an inferior settlement in return for the certainty of a payment or a higher fee. *See, e.g.*, *Briseno v. Henderson*, 998 F.3d 1014, 1023–25, 1030–31 (9th Cir. 2021). Now, as before, the court has little information to use in assessing whether the negotiations were at arm's length.

Second, on the proposed attorneys' fee, the renewed motion does not add evidence justifying that fee. Counsel does point out that the proposed fee is similar to those approved in other cases if it is expressed as a proportion of the overall settlement amount. *See* Renewed Mem. at 10–11. Counsel also again emphasizes that if the court does not approve the proposed

4

1    fee award in full, then the class will receive the difference. *See id.* at 14–15. And in response to
2    the court's concern that "relatively little [had] happened since this action was removed from state
3    court," Order (Nov. 15, 2024) at 11, counsel asserts "[t]he Parties litigated this matter in state
4    court for nearly a year before being removed to federal court," including by engaging in "formal
5    discovery and substantial informal discovery," Renewed Mem. at 15. But counsel does not offer
6    specifics to substantiate that assertion.

7    Third, Lingle argues the settlement agreement allocates a reasonable share of the gross
8    settlement amount to fees and costs. *See id.* at 10–11. The renewed motion cites other cases in
9    which courts have approved similarly proportioned awards. *See id.* Lingle also points out that
10   the agreement allocates $160,000 to his PAGA claim, resulting in a significant payment to the
11   Labor & Workforce Development Agency (LWDA). *See id.* at 11. The payment to the LWDA,
12   Lingle argues, is actually something of a benefit to class members, as it supports "the
13   enforcement of labor laws" and the "education of employers and employees about their rights and
14   responsibilities." *Id.* (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D.
15   Cal. 2016), in turn quoting Cal. Lab. Code § 2699(i) (2016), currently codified in § 2699(m)).
16   But the interaction between class settlements and PAGA payments is complex, and the civil
17   penalty is not intended to redress employee injuries. *See O'Connor*, 201 F. Supp. 3d at 1134–35;
18   *see also Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 542 (2021) ("The civil
19   penalties recovered on the state's behalf are intended to remediate present violations and deter
20   future ones, *not* to redress employees' injuries." (emphasis in original; citation and quotation
21   marks omitted)). More fundamentally, however, this court's concern was not that the proposed
22   settlement agreement allocates too much money to the PAGA claims and the LWDA, but rather
23   that the amount of proposed fees and costs was similar to the amount of the payments to class
24   members. *See* Order (Nov. 15, 2024) at 3, 11–12.

25   Fourth, Lingle's counsel does offer more information in response to the court's concern
26   that the settlement agreement heavily discounts the potential damages award to class members.
27   *See id.* at 11–13. Lingle urges the court not to rely on Centimark's estimate of the amount in
28   controversy at removal. That estimate, he explains, was based on an inaccurate assumption about

5

the number of class members. *See* Renewed Mem. at 13. Lingle's counsel also explains further, in a supplemental declaration, why in his view the settlement fairly balances the likely value of the class's claims after a trial with the risks and delays of continued litigation. *See* Suppl. Rodriguez Decl. ¶ 9(a)–(d), (h). Taking the example cited in this court's previous order—i.e., the claim for unpaid minimum wages—the supplemental declaration first cites cases that could be interpreted as supporting Centimark's position that travel time was not compensable. *See id.* ¶ 9(a) (citing *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) and *Hernandez v. Pac. Bell Tel. Co.*, 29 Cal. App. 5th 131 (2018)). Counsel then explains in more detail how an analysis of company time records showed employees did not travel significantly for work during six to eight months per year. *See id.* Counsel then cites case law that could support Centimark's position that liquidated damages would not be available, *see id.* (citing *Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427 (2022)), and an intervening decision by the California Supreme Court precluding certain relief if an employer demonstrates it acted on an objectively reasonable, good-faith belief about what the law requires, *see id.* ¶ 8(h) (citing *Naranjo v. Spectrum Security Services, Inc.*, 15 Cal. 5th 1056 (2024)). This information does offer reassurance that the settlement agreement strikes a rational compromise given the litigation risk.

On balance, the court remains concerned with the absence of evidence showing the parties negotiated at arm's length, the size of the proposed fee and cost awards and discounts to the potential damages award. Although it is a close call, the court finds it is likely to approve the settlement as fair, reasonable and adequate, but only if Lingle ultimately offers evidence to support his counsel's assertions in his sworn declaration that the negotiations before the mediator were "contentious and adversarial." For example, Lingle could submit a declaration by counsel with information about the parties' negotiations and the mediation, and he could submit copies of the parties' written mediation submissions for the court's confidential, in camera review. *See, e.g., Mostajo v. Nationwide Mut. Ins. Co.*, No. 17-00350, 2022 WL 3141879, at *6 (E.D. Cal. Aug. 5, 2022) (directing in-camera submission of mediation briefs). The same submissions could permit the court to assess litigation risks and confirm the settlement is adequate. *See, e.g., Borelli v. Black Diamond Aggregates, Inc.*, No. 14-02093, 2022 WL 2079375, at *7 (E.D. Cal. June 9,

1    2022) (undertaking such an analysis).  To be clear, the court does not anticipate granting final
2    approval of the proposed settlement agreement without reviewing the parties' mediation filings or
3    equivalent records in camera.  Finally, although "the Court has serious concerns about the fee
4    award, the requested award is not a basis for denial of settlement approval at this juncture.  The
5    motion for fees will be dealt with at the appropriate time." *Viceral v. Mistras Grp., Inc.*,
6    No. 15-02198, 2016 WL 5907869, *10 (N.D. Cal. Oct. 11, 2016).

7    If a proposed agreement is likely to be finally approved, "[t]he court must direct notice in
8    a reasonable manner to all class members who would be bound."  Fed. R. Civ. P. 23(e)(1)(B).
9    For classes certified under Rule 23(b)(3), as is likely in this case, the notice must state in plain,
10   easily understood language:

11       (i) the nature of the action;

12       (ii) the definition of the class certified;

13       (iii) the class claims, issues, or defenses;

14       (iv) that a class member may enter an appearance through an attorney
15       if the member so desires;

16       (v) that the court will exclude from the class any member who
17       requests exclusion;

18       (vi) the time and manner for requesting exclusion; and

19       (vii) the binding effect of a class judgment on members under Rule
20       23(c)(3).

21   Fed. R. Civ. P. 23(c)(2)(B).

22   The proposed notice in this case describes the nature of this case and the basic terms of the
23   settlement agreement, *see* Renewed Mot. Ex. A at 38–40, the definition of the class, *id.* at 37, the
24   claims asserted on behalf of the class, *id.* at 38, class members' rights to appear and object, *see id.*
25   at 37–38, 42–43, the relevant deadlines and hearings, *see id.* at 43–44, and the binding effect of
26   the proposed settlement, *see id.* at 41.  The notice therefore meets the requirement of Rule
27   23(c)(2)(B).

### III. PAGA CLAIMS

A trial court must "review and approve" the settlement of a PAGA action. Cal. Lab. Code § 2699(s)(2). This provision ensures "that any negotiated resolution is fair to those affected." *Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017). "Because many of the factors used to evaluate class action settlements bear on a settlement's fairness—including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of future litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement." *Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021), *disapproved of on other grounds by Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664 (2024). It also is "appropriate to review a PAGA settlement to ascertain whether a settlement is fair in view of PAGA's purposes and policies . . . to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Id.*

The parties do not cite any provisions of California law requiring a preliminary review of a proposed settlement along the lines of the procedure laid out in Federal Rule of Civil Procedure 23(e), but federal district courts do commonly evaluate proposed PAGA settlements in conjunction with motions for preliminary approval of class settlements. *See, e.g.*, *O'Connor*, 201 F. Supp. 3d at 1132–35. The district court explained persuasively in *O'Connor*, a case of PAGA, Labor Code and unfair competition violations based in part on worker misclassification claims, how the purposes of PAGA and Rule 23 can interact:

> [I]f the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled. By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA. Likewise, if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or contained substantial injunctive relief, this would support PAGA's interest in augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance. But where . . . the compensation to the class amounts is relatively modest when compared to the verdict value, the non-monetary relief is of limited benefit to the class, and the

8

> settlement does nothing to clarify the status of drivers as employees versus independent contractors, the settlement of the non-PAGA claims does not substantially vindicate PAGA. In these circumstances, the adequacy of settlement as a whole turns in large part on whether the PAGA aspect of the settlement can stand on its own.

*Id.* at 1134–35 (quotation marks and citations omitted).

This case involves no injunctive relief. The proposed settlement is relatively modest, as is the proposed civil penalty, both in absolute and relative terms. The parties do not propose to discount the PAGA civil penalty significantly: the settlement agreement allocates $140,000 of the $600,000 gross settlement to the PAGA claims, and under section 2699, 75 percent of that sum ($105,000) will be paid to the LWDA. The civil penalty must therefore "stand on its own." If, as plaintiff's counsel believes, the risks of continued litigation and delayed payments are substantial, then it is likely – though not guaranteed -- the court will ultimately conclude the proposed settlement agreement serves PAGA's purposes sufficiently to warrant final approval under section 2699(s)(2).

## IV. CONCLUSION

The court **grants** the renewed motion for preliminary approval (ECF No. 48) subject to the concerns identified above, which the parties must address prior to final approval. The court **approves** the schedule and deadlines in the proposed order (ECF No. 48-5):

- Defendant provides the Class Information to the Administrator: within 21 calendar days of this order.
- Settlement Administrator to mail Notice of Class Action Settlement: within 14 calendar days after receipt of the Class Information.
- Settlement Administrator to re-mail Notice of Class Action Settlement: 5 calendar days after receipt of notice that the Notice of Class Action Settlement was undeliverable.
- Plaintiff to file Motion for attorney's fees and costs, Class Representative Enhancement Award, and Settlement Administrator Costs: no later than 15

9

calendar days before the Response Deadline to the Notice of Class Action Settlement.

- Response Deadline to the Notice of Class Action Settlement: 45 calendar days after mailing.
- New Response Deadline to the Notice of Class Action Settlement for those receiving re-mailed Notices of the Class Action Settlement: the original Response Deadline or 10 calendar days from the date of remailing, whichever is later.
- Settlement Administrator to provide counsel for the Parties a complete list of all Class Members who timely submitted a Request for Exclusion and a Declaration regarding the statistics and responses of settlement administration to date: 14 calendar days after the Response Deadline.

A final approval heaving is set for **August 28, 2025 at 10:00 a.m.**, with briefs and supporting documentation to be submitted according to the Federal Rules of Civil Procedure and this District's Local Rules.

Participating Class Members who object in a timely manner as set forth in the settlement agreement may appear and present such objections at the fairness hearing in person or by counsel.

If for any reason the court does not grant final approval of the Agreement, all evidence and proceedings held in connection therewith shall be without prejudice to the status quo and rights of the parties to the litigation, including all challenges to class certification for any purpose other than approving a settlement class. The parties will revert to their respective positions as if no settlement had been reached at all.

This order resolves ECF No. 48.

IT IS SO ORDERED.

DATED: February 5, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE