Galen T. Shimoda (Cal. State Bar No. 226752)
Justin P. Rodriguez (Cal. State Bar No. 278275)
Renald Konini (Cal. State Bar No. 312080)
**Shimoda & Rodriguez Law, PC**
9401 East Stockton Boulevard, Suite 120
Elk Grove, CA 95624
Telephone: (916) 525-0716
Facsimile: (916) 760-3733
Email: attorney@shimodalaw.com
       jrodriguez@shimodalaw.com
       rkonini@shimodalaw.com

Attorneys for Plaintiff ANTHONY LINGLE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LINGLE, individually and on behalf of all other similarly situated employees,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CENTIMARK CORPORATION, a Pennsylvania Corporation; and DOES 1 to 100, inclusive,<br><br>　　　　Defendant. | Case No. 2:22-CV-01471-KJM-JDP<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Date:　　　　October 17, 2025<br>Time:　　　　1:30 p.m.<br>Courtroom:　　3<br>Judge:　　　　Hon. Kimberly J. Mueller<br><br>Filed:　　　　December 2, 2021<br>FAC Filed:　　July 22, 2022<br>SAC Filed:　　October 7, 2022<br>Trial Date:　　None Set |

**TABLE OF CONTENTS**

I. Introduction and Opening Summary of Argument ..................................................................1

II. Procedural and Litigation History ...........................................................................................2

III. Investigation and Discovery Conducted ..................................................................................3

IV. Negotiation and Proposed Settlement ......................................................................................3

    a. Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations ....................3

    b. The Terms of the Agreement ...........................................................................................4

    c. Allocation of Settlement Funds .......................................................................................6

V. CAFA Settlement Notice, Preliminary Approval Of Class Action Settlement, And The Subsequent Class Action Administration ................................................................................7

VI. Argument ..................................................................................................................................9

    a. Class Action Settlements and PAGA Settlements are Subject to Court Review and Approval ...........................................................................................................................9

    b. Certification of the Settlement Class is Appropriate .......................................................9

    c. Adequate Notice Was Provided .....................................................................................10

    d. The Agreement Should Be Given Final Approval Because It Is Fair, Reasonable and Adequate ........................................................................................................................10

        i. The Settlement is Fair and Reasonable Based on the Strength of Plaintiff's Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation ...............10

        ii. Risk of Maintaining Class Action Status Through Trial ..................................12

        iii. The Amount Offered In Settlement .................................................................13

        iv. The Settlement is Adequate In Light Of Potential Costs, Risks, and Delays ...13

        v. The Views and Experience of Plaintiff's Counsel .............................................13

        vi. The Presence of A Governmental Participant and the Reaction of Class Members ...........................................................................................................14

VII. Conclusion ..............................................................................................................................14

# TABLE OF AUTHORITIES

**CALIFORNIA CASES**

*In re Microsoft I-V Cases*, 135 Cal.App.4th 706 (2006) ........................................................................6

*Nordstrom Com. Cases*, 186 Cal.App.4th 576 (2010) ............................................................................5

**CALIFORNIA STATUTES**

Cal. Lab. Code § 2699......................................................................................................................2, 9

Cal. Lab. Code § 2699.3.....................................................................................................................2

**FEDERAL CASES**

*Acosta v. Evergreen Moneysource Mortgage Company*, 2017 WL 3433205 (E.D. Cal. 2017) ............12

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) ..................................................7

*Avila v. Cold Spring Granite Co.*, 2018 WL 400315 (E.D. Cal. 2018) ..................................................11

*Bellinghausen v. Tractor Suppply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ..............................................11

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) .....................................................................14

*Bravo v. Gale Triangle, Inc.*, 2017 WL 708766 (C.D. Cal. 2017) ...........................................................11

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................................8, 10

*Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 (N.D. Cal. 2011) ............................................5

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ..................................................................10

*Davis v. Cox Commc'ns California, LLC*, 2017 WL 1496407 (S.D. Cal. 2017) ......................................5

*Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801 (E.D. Cal. 2012) ...................................................5

*Garcia v. City of King City*, 2017 U.S. Dist. LEXIS 11552 (N.D. Cal. 2017)........................................10

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. 2012) ...........................................5, 10

*Gil v. Outback, Inc.*, 2023 WL 8433682 (E.D. Cal. 2023) .....................................................................12

*Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D. Cal. 2009) ..........................................................5

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015) ...................................................12

*In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539 (9th Cir. 2019) ....................................9

*In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413 (N.D. Cal. 1994) .........................9

*Jack v. Hartford Fire Ins. Co.*, 2011 WL 4899942 (S.D. Cal. 2011) .......................................................5

*Jennings v. Open Door Marketing, LLC*, 2018 WL 4773057 (N.D. Cal. 2018) .....................................5

*Junkersfeld v. Med. Staffing Sols., Inc.*, 2022 WL 2318173 (E.D. Cal. 2022) .........................................5

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)...............................................................................13

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ........................................... 12, 13

*Martinez v. Knight Transportation, Inc.*, 2023 WL 2655541 (E.D. Cal. 2023) .......................................9

*Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219 (N.D. Cal. 2017) ....................................10

*Moore v. Fitness Int'l, LLC*, 2014 WL 12571448 (S.D. Cal. 2014)  ........................................................5

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .............................................11

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ........................................................................8, 10

*Riggins v. Riggins*, 415 F2d 1259 (9th Cir. 1969)  ..................................................................................12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)..........................................................12

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006) ............................................9

*Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451 (N.D. Cal. 2016) ........................................................5

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ..................................................................................8, 10

*Singer v. Becton Dickinson & Co.*, 2010 WL 2196104 (S.D. Cal. 2010) .................................................5

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................................................9

*Syed v. M-I, L.L.C.*, 2017 WL 714367 (E.D. Cal. 2017) ..........................................................................5

*Walsh v. CorePower Yoga LLC*, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. 2017) ................................8

*Wright v. Linkus Enters.*, 259 F.R.D. 468 (E.D. Cal. 2009) ....................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. Proc., Rule 23.........................................................................................................................9

## I. INTRODUCTION AND OPENING SUMMARY OF ARGUMENT

Plaintiff Anthony Lingle ("Plaintiff") seeks final approval of a non-reversionary wage and hour class action and Private Attorneys General Act ("PAGA") settlement in the gross amount of $600,000. *See generally* Exhibit A (Class and Representative Action Settlement Agreement and Release ["Agreement"]).  Plaintiff brought this class action individually and on behalf of similarly situated employees who worked for Defendant Centimark Corporation, ("Defendant") (Plaintiff and Defendant are sometimes collectively referred to as the "Parties").  *See generally* Exhibit B (Plaintiff's Operative Complaint).  There are 178 Participating Class Members.

Plaintiff has alleged that Defendant failed to pay overtime wages, failed to pay minimum wages, failed to provide meal and rest periods or premiums in lieu thereof, failed to provide accurate wage statements, failed to timely pay final wages, failed to pay all owed paid sick time, and engaged in unfair competition.  *See generally* Exhibit B; *see also* Declaration of Justin P. Rodriguez ("Decl. Rodriguez"), ¶¶ 2, 9.  Plaintiff has also alleged Defendant is liable for civil penalties under the PAGA based on these violations.  *See id.*; Exhibit C (Plaintiff's Ltr. to the Labor and Workforce Development Agency ["LWDA"] Regarding PAGA Claims).  Defendant has denied all of Plaintiff's allegations in their entirety and any liability or wrongdoing of any kind.  *See* Decl. Rodriguez, ¶ 5.  Defendant has also denied that this case is appropriate for class certification other than for purposes of settlement.  *See id.*  However, subject to Court approval, the Parties have been able to compromise and settle all asserted claims as a result of extensive investigations, document and data exchanges, and extended negotiations.  *See* Exhibit A.  Plaintiff and Class Counsel believe the proposed Agreement is fair, reasonable, and adequate based on the investigations, discovery, employee data exchanges, negotiations, and a detailed knowledge of the issues in this case.  *See* Decl. Rodriguez, ¶¶ 6, 11; Declaration of Anthony Lingle ("Decl. Lingle") ¶ 10.  The reaction of Class Members to the preliminarily approved Agreement has also been overwhelmingly positive, giving substantial Support to the Agreement, and all terms and allocations therein, being fair, reasonable, and adequate.  Only one Class Member has opted out of the settlement and there have been zero objections to the Agreement.  *See* Declaration of Madely Nava ("Decl. Nava"), ¶¶ 6-7.

It is well within the discretion of this Court to grant final approval of the preliminarily approved settlement, which satisfies all of the criteria for settlement approval under federal law. Accordingly, Plaintiff requests that the Court: (1) certify the settlement class; (2) grant final approval of the Agreement; (3) find that the procedures used to notify Class Members complied with due process; (4) grant Plaintiff's request for attorney's fees and costs, an Enhancement Award to the Class Representative, and Settlement Administrator Costs as set for in Plaintiff's separately filed Motion (Doc. Nos. 58 through 58-5, and 59), which will be heard concurrently with this motion for final approval and is incorporated by reference; and (5) adopt the implementation schedule contained in the proposed order filed concurrently herewith.

## II. PROCEDURAL AND LITIGATION HISTORY

Plaintiff filed a class action complaint against Defendant in Sacramento County Superior Court on approximately December 2, 2021. *See* Decl. Rodriguez, ¶¶ 2-3. Plaintiff exhausted administrative remedies under the PAGA by providing notice of the claims and violations to the LWDA. *See* Exhibit C; Cal. Lab. Code § 2699.3(a), (c)[1]; Decl. Rodriguez, ¶ 3. Thereafter, Plaintiff filed a First Amended Class Action Complaint on approximately July 22, 2022, to include the PAGA claim. *See* Decl. Rodriguez, ¶ 3. The Parties litigated the case and engaged in discovery in the state court proceedings until Defendant removed the action to federal court on or about August 23, 2022. *See* Decl. Rodriguez, ¶ 3. After removal, Plaintiff filed a Second Amended Complaint on October 7, 2022, to address several issues Defendant raised in meet and confer discussions regarding the sufficiency of the pleadings. *See id.* However, disputes remained and Defendant filed a partial motion to dismiss and strike, which the Court granted in part and denied in part. Prior to further amending the operative complaint, the Parties agreed to mediate and stay the litigation pending mediation. *See id.* The Parties were able to resolve the claims at mediation as a result of a mediator's proposal. *See id.* at ¶¶ 4, 8. As such, the Second Amended Complaint remains the operative pleading in this matter. *See* Exhibit B. *See id.*

//

//

---

[1] Although the PAGA was recently amended, the amendments specifically state they are applicable to cases filed after June 19, 2024. *See* Cal. Lab. Code § 2699(v)(1). Because the PAGA notice predates this, all references to the PAGA in this Motion will be based on the statutory numbering applicable prior to the July 1, 2024, amendment.

### III. INVESTIGATION AND DISCOVERY CONDUCTED

Plaintiff thoroughly investigated the issues affecting certification, the merits, and potential damages. *See id.* at ¶¶ 6-11; Decl. Lingle, ¶¶ 3, 5-7; *see also* Declaration of Justin P. Rodriguez in Support of Plaintiff's Motion for Attorneys' Fees and Costs, Representative Enhancement, and Settlement Administrator Costs ("JPR Fee Decl.") (Dkt. No. 58-2), pgs. 4-7, ¶¶ 7-10. Plaintiff worked during the time all of Defendant's policies and practices at issue in the Complaint were in effect and provided information regarding these policies and practices, enabling pre-filing investigations to take place. *See* Decl. Lingle, ¶¶ 2, 5. The Parties engaged in written discovery, which involved a substantial amount of time meeting and conferring on discovery disputes. *See* Decl. Rodriguez, ¶ 7; *see also, generally,* Exh. A to JPR Fee Decl. (SRL Attorney Billing Records). The formal discovery, as well as the informal discovery conducted in connection with mediation, included an exchange of documents and review of a representative sample of Class Members' wage and hour data, such as timecards, paystubs, payroll data, and relevant policies for the entirety of the statute of limitations applicable to the asserted claims. *See id.* Several hundred pages of documents were produced in discovery as well as numerous electronic payroll and time card report excel files, which contained a total of more than 104,000 rows of data. In conducting the merits and damages analysis, Plaintiff had to cross reference data from several different spreadsheets at a time over the course of the statutory period to appropriately and accurately analyze the information. The discovery covered all aspects of the claims, including certification, the merits, damages, the scope and configuration of Class Members, the content and implementation of the wage and hour policies at issue, and manageability concerns at trial, among other relevant areas. *See id.* The information allowed Plaintiff to determine the extent and frequency of any violations in accordance with Plaintiff's contentions and create an accurate damages model to assess the reasonableness of any settlement. *See* Decl. Rodriguez, ¶¶ 7, 9-10.

### IV. NEGOTIATION AND PROPOSED SETTLEMENT

#### a. **Plaintiff and Defendant Engaged in Extensive Arm's Length Negotiations**

The final settlement occurred only after extended, arm's length negotiations. *see also, generally,* Exh. A to JPR Fee Decl. Over the course of approximately three (3) years, Plaintiff has been investigating the claims and discussing with Defendant's counsel the merits of the claims and issues

present in this case. *See* Decl. Rodriguez, ¶¶ 3, 5-8; JPR Fee Decl., ¶¶ 7-9. The Parties exchanged substantial amounts of information and legal analysis in connection with these discussions. *See id.* It was only after these extended discussions, which included a full day mediation with Lou Marlin, Esq., that the Parties were able reach a resolution on the essential terms of the Agreement, which only occurred after a mediator's proposal to bridge the Parties' opposing positions. *See* Decl. Rodriguez, ¶ 8. After reaching resolution on the essential terms at mediation, the Parties continued to negotiate additional terms relevant to settlement administration and notice procedures, reaching agreement on all terms on November 20, 2023. *See id.* at ¶¶ 4, 8; *see, generally,* Exhibit A.

### b. The Terms of the Agreement

1. Class Members will include all non-exempt employees, excluding any individuals employed solely as office or administrative staff, who have or continue to work for Defendant in California, and who have not signed, or opted out of, an arbitration agreement, during the Class Settlement Period (July 11, 2018, to November 19, 2023). PAGA Members will include all non-exempt employees, excluding any individuals employed solely as office or administrative staff, who have or continue to work for Defendant in California during the PAGA Settlement Period (May 17, 2021, to November 19, 2023). *See* Exhibit A, at pgs. 2 & 7, ¶¶ 5, 7, 24, 27.

2. Defendant will pay the Gross Settlement Amount of $600,000, which is exclusive of the employer's share of payroll taxes. *See id.* at pg. 5, ¶ 16. No portion of the Gross Settlement Amount will revert to Defendant. *See id.* at pg. 21, ¶ 56. PAGA Members will be paid their share of the PAGA Payment regardless of whether they opt out of being Class Members. *See id.* at pgs. 19-20, ¶ 53.e.

3. Up to $10,000 will be paid to Plaintiff as a Class Representative Enhancement Award. This amount will be in addition to any amount Plaintiff may be entitled to as a Class Member and PAGA Member under the terms of the Agreement. *See id.* at pgs. 3, 21, & 26, ¶¶ 9, 56, 60.

4. The Parties agree that $140,000 of the Gross Settlement Amount shall be allocated to resolving claims under the PAGA. Seventy-Five percent (75%) of the PAGA Payment will be paid to the LWDA and Twenty-Five percent (25%) will be paid to PAGA Members. *See* Exhibit A at pgs. 5-7, ¶¶ 17, 20, 26. Given the risk of proving the claims on the merits, the derivative nature of the penalties, the efforts by Defendant to maintain compliant policies and take corrective action, the presence of what

may likely be deemed good faith disputes, and the Court's discretion to reduce any penalty award, Plaintiff believes the $140,000 PAGA Payment allocation represents a meaningful settlement aimed at deterring non-compliance given the facts of this case. *See* Decl. Rodriguez, ¶¶ 6-11; *see also Nordstrom Com. Cases*, 186 Cal.App.4th 576, 589 (2010) (approving $0 allocation to the resolution of PAGA claims based on their being disputed and being part of a class settlement which was evaluated based on the terms of the agreement overall); *Junkersfeld v. Med. Staffing Sols., Inc.*, 2022 WL 2318173, *8 n.2 (E.D. Cal. 2022) (collecting cases with PAGA settlement values ranging from .037%-1%); *Jennings v. Open Door Marketing, LLC*, 2018 WL 4773057, *9 (N.D. Cal. 2018) (approving settlement of PAGA claims at 0.6% of total estimated value due to risk of no recovery); *Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, *7 (N.D. Cal. 2016) (approving $10,000 PAGA settlement allocation where total PAGA penalty exposure was approximately $5.2 million, or 0.2% of total estimated value); *Davis v. Cox Commc'ns California, LLC*, 2017 WL 1496407, *1 (S.D. Cal. 2017) (preliminarily approving $4,000 PAGA allocation in $275,000 settlement); *Moore v. Fitness Int'l, LLC*, 2014 WL 12571448, *5 (S.D. Cal. 2014) (approving $2,500 PAGA allocation when attorneys' fees award alone amounted to $200,000); *Jack v. Hartford Fire Ins. Co.*, 2011 WL 4899942, *6 (S.D. Cal. 2011) (approving $3,000 PAGA allocation in $1,200,000 settlement); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, *2 (S.D. Cal. 2010); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, *1, *9 (N.D. Cal. 2009) (approving $1,500 PAGA allocation in $1,026,000 settlement); *Syed v. M-I, L.L.C.*, 2017 WL 714367, *13 (E.D. Cal. 2017) (approving $100,000 PAGA allocation in $3,950,000 gross settlement amount allocated to California class even though PAGA exposure was calculated at $53,600,000, or 0.2% of total estimated potential value); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, *6-*7 (E.D. Cal. 2012) (approving $10,000 PAGA allocation in a $3,700,000 settlement); *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, *14 (E.D. Cal. 2012) ($10,000 PAGA allocation from $2,500,000 settlement fund); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, *1 (N.D. Cal. 2011) ($10,000 PAGA allocation from $6,900,000 settlement fund).

      5.      The Parties agree that up to one-third (1/3) of the Gross Settlement Amount ($200,000) will be paid for Plaintiff's attorneys' fees incurred in the litigation of this case. Defendant will not oppose any application for attorneys' fees so long as it is within this threshold. *See id*. at pg. 26, ¶ 61.

Additionally, the Parties agree that Plaintiff will also be entitled to the actual litigation costs as approved by the Court in an amount not to exceed $15,000. *See id.*

6. Any allocated amounts under the Agreement for Settlement Administrator Costs, Class Representative Enhancement Award, and attorney's fees and costs that are not ultimately awarded by the Court will remain part of the Net Settlement Amount and be paid out to Participating Class Members on a pro rata basis as set forth in the Agreement. *See* Exhibit A, at pgs. 26 & 28, ¶¶ 60-61, 65. These amounts will be paid out from the Gross Settlement Amount, not in addition to the Gross Settlement Amount. *See id.* at pgs. 5-6, ¶¶ 16, 21.

7. Class Members who fail to timely opt-out of this settlement will waive all Released Class Claims as set forth in the Agreement. *See* Exhibit A at pgs. 7-8, 16, & 19, ¶¶ 28, 35, 49, 53.e. PAGA Members will waive all Released PAGA Claims as set forth in the Agreement regardless of whether they opt out of being a Class Member. *See id.* at pgs. 10, 16, & 20, ¶¶ 36, 50, 53.e.

8. For any portion of the Net Settlement Amount or PAGA Payment allocated to Participating Class Members and/or PAGA Members that is not claimed by them by cashing their respective settlement checks within 180 calendar days of issuance, that remaining amount shall be donated to Salvation Army Sacramento Metro under the doctrine of *cy pres*. *See* Exhibit A at pg. 28, ¶ 64. Because the Agreement provides for all funds such that there is no residue, the provisions of California Civil Procedure Code section 384 are inapplicable. *See In re Microsoft I-V Cases*, 135 Cal.App.4th 706, 718, 720 (2006). The designated beneficiary promotes the law consistent with the objectives and purposes underlying the lawsuit as it is a non-profit aimed at assisting individuals obtain gainful employment through workforce development and unemployment services. *See id.* at 722-724; *see also* Decl. Rodriguez, ¶ 21.

c. **Allocation of Settlement Funds**

Payment to Class Members and PAGA Members of their Individual Settlement Payment will <u>not</u> require the submission of a claim form. A Net Settlement Amount will be determined by subtracting from the Gross Settlement Amount any amounts for approved attorneys' fees and costs, Class Representative Enhancement Award, the Settlement Administrator Costs, and the PAGA Payment. Each Class Member's proportionate share will be determined by dividing the Net Settlement Amount by the Workweek Total of

all Class Members to get a Workweek Value. Then each Participating Class Members workweeks will be multiplied by the Workweek Value to establish their Individual Settlement Payment. *See* Exhibit A at pgs. 21 & 24, ¶¶ 56, 58(i). Each PAGA Member's share of the PAGA Payment will be determined by dividing the 25% portion of the PAGA Payment, *i.e.* the aggregate of all Individual PAGA Payments, by the total number of pay periods worked by PAGA Members during the PAGA Settlement Period to get a per pay period value. Then each PAGA Member will have their respective number of pay periods worked during the PAGA Settlement Period multiplied by the per pay period value to arrive at their Individual PAGA Payment. *See id.* at pg. 25, ¶ 59. Twenty percent (20%) of Class Members' Individual Settlement Payment will be allocated for payment of disputed wages and eighty percent (80%) for disputed statutory penalties and interest. *See id.* at pgs. 26-27, ¶ 62. 100% of PAGA Members' Individual PAGA Payments will be allocated as penalties. *See id.* No portion of the Gross Settlement Amount will revert to Defendant. *See id.* at pgs. 21-22, ¶ 56.

V. **CAFA SETTLEMENT NOTICE, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND THE SUBSEQUENT CLASS ACTION ADMINISTRATION**

Plaintiff initially filed a motion for preliminary approval on November 22, 2023. *See* Doc. Nos. 43 to 43-6 (Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement). Defendant sent notice as required under the CAFA on December 4, 2023. *See* Dkt. No. 44 (Declaration of Paul M. Smith Regarding 28 U.S.C. § 1715). More than 90 days have passed since the notice was served, which has been deemed sufficient to satisfy CAFA's notice requirements. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973-974 (E.D. Cal. 2012) (collecting cases).

Plaintiff's motion for preliminary approval of the class action settlement was approved by the Court on February 6, 2025. To comply with the class members' due process rights, the parties enlisted an exhaustive method to ensure the best practical means possible were used to provide notice to the class. The parties provided the Settlement Administrator with all information necessary to effectuate the notice and calculate Class Member's individual shares. *See* Declaration of Madely Nava on Behalf of Apex Class Action, LLC In Support of Plaintiff's Motion For Attorney's Fees And Costs, Class Representative Enhancement Award, and Settlement Administrator Costs ("Nava Fee Decl."), Dkt. No.

58-4, ¶¶ 3-5; Decl. Nava, ¶ 5. The class action administrator then updated this information by doing an address trace for each individual using this information. *See* Nava Fee Decl, ¶ 6. If a notice was returned as undeliverable, a further investigation was performed and they were re-mailed using updated information. *See id.* at ¶¶ 6-10; Decl. Nava, ¶¶ 3-5. Of the 497 notices mailed, only 10 were undeliverable after use of these methods. *See* Decl. Nava, ¶ 5. The notices included information regarding the requested attorneys' fees, costs, payment to the LWDA, administration costs, and tax allocations. *See* Exh. A to Nava Fee Decl., at pg. A-2. The average distribution to Participating Class Members is approximately $1,290.14 with a maximum distribution of approximately $5,553.91. *See* Decl. Nava, ¶ 11. There have been zero objections to the preliminarily approved settlement and only one (1) Class Member opted out. *See id.* ¶¶ 6-7.

It is not required that Class Members be given actual notice of a class settlement; instead, the best practicable notice under the circumstances is all that is required. *See Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017); *Walsh v. CorePower Yoga LLC*, 2017 U.S. Dist. LEXIS 163991, at *12-14 (N.D. Cal. 2017); *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474-75 (E.D. Cal. 2009). In *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994), the Court rejected a class member's argument that he had not received due process because he did not receive notice until after the opt out period, finding that, so long as the notice process utilized is the best practicable under the circumstances, due process is satisfied even if there is no actual receipt of the notice. *See Silber*, 18 F.3d at 1453-1454. A similar finding was made in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). With regard to any undeliverable Notice in this case, the Court in *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) found that class members who did not receive actual notice due to their mailings being deemed undeliverable were still properly held to be part of the class settlement because they received the best notice practicable under the circumstances. *See Rannis v. Recchia*, 380 F. App'x at 650-651.

The notice method in *Rannis* is similar to that used in the present case. For example, the notice contains all information necessary for a Class Member to assess the litigation, the settlement, and whether they wanted to participate, object, or opt-out. *See generally* Exh. A to Nava Fee Decl, pgs. A-1 to A-12. The Settlement Administrator utilized a national change of address database, forwarding

notices, and skip tracing in an effort to ensure that all reasonable means were exhausted in attempting to provide Class Members notice of this settlement.  *See* Nava Fee Decl., ¶¶ 5-10; Decl. Nava, ¶¶ 2-9.

## VI.   ARGUMENT

### a. Class Action Settlements and PAGA Settlements are Subject to Court Review and Approval

A class action may not be dismissed, compromised, or settled without Court approval and the decision to approve or reject a settlement is committed to the Court's sound discretion.  *See* Fed. R. Civ. Proc. 23(e).  Similarly, settlements under the PAGA require Court review and approval.  *See* Cal. Lab. Code § 2699(l).  Approval is appropriate when it has been shown that the Court will likely be able to (1) approve the proposed settlement under Rule 23(e)(2) as well as (2) certify the class.  "Under Rule 23(e)(1), the court must direct notice to all class members who would be bound by the settlement proposal if the parties show that 'the court will likely be able to:' (i) approve the proposal under Rule 23(e)(2)'s fair, reasonable, and adequate standard; and (ii) certify the proposed class."  *Martinez v. Knight Transportation, Inc.,* 2023 WL 2655541, *6 (E.D. Cal. 2023); Fed. R. Civ. P. 23(e)(1).  While the standards for reviewing proposed class settlements are clear, "their application is painstakingly fact-specific and hampered by the much greater knowledge of the parties as to the give-and-take of the bargaining process. Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk."  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  There is a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *In re Hyundai and Kia Fuel Economy Litigation,* 926 F.3d 539, 556 (9th Cir. 2019).

### b. Certification of the Settlement Class is Appropriate

The Court preliminarily certified the settlement class on February 6, 2025.  The only relevant change in the facts of this case since that time is that one (1) Class Member opted out of the settlement.  *See* Decl. Nava, ¶ 6.  There are still 178 Participating Class Members, which is sufficient to satisfy numerosity.  *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006); *In re Scorpion Techs., Inc. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21413, *10 (N.D. Cal. 1994).  There have been

zero objections to any aspect of the settlement, let alone the certification of a settlement class. *See* Decl. Nava, ¶ 7. As such, there is nothing that would merit any change to the Court's decision at preliminary approval to certify the class for purposes of settlement. *See Garcia v. City of King City*, 2017 U.S. Dist. LEXIS 11552, *4 (N.D. Cal. 2017); *4; *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, *4 (N.D. Cal. 2017).

### c. Adequate Notice Was Provided

As set forth in Section V, *Supra*, the parties provided the best notice practicable under the circumstances utilizing notice methods that have been deemed sufficient in numerous other cases. Class Members' contact information was checked against the United States Postal Service's National Change of Address Database for more recent addresses to mail the Court approved Notice of Settlement to and any returned mailings were remailed to any forwarding address provided. *See* Nava Fee Decl., ¶¶ 6-10; Decl. Nava, ¶¶ 3-9. For those notices returned without any forwarding address, advanced searches, skip traces, were used to find any updated mailing addresses. *See id.* The notice provided is similar to the procedures utilized in other cases, which have been found to be sufficient even for any class members whose notices were deemed undeliverable. *See Silber*, 18 F.3d at 1453; *Briseno*, 844 F.3d at 1129; *Rannis*, 380 F.App'x 646. Thus, adequate notice has been provided.

### d. The Agreement Should Be Given Final Approval Because It Is Fair, Reasonable and Adequate

To determine whether a settlement is fair, reasonable, and adequate, a Court will consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

#### i. The Settlement is Fair and Reasonable Based on the Strength of Plaintiff's Case and the Risks, Costs, Complexity and Likely Duration of Further Litigation

A review of the Agreement's terms in light of potential risks, costs, and delays should not give rise to any doubts about its fairness. Plaintiff's counsel carefully took into consideration risks involved

with each of the claims, including, but not limited to, whether Plaintiff would be successful in proving certain types of pay should have been incorporated into the regular rate of pay, the viability of off the clock and travel time pay claims, the viability of meal and rest period claims in light of Defendant's timekeeping software and its effects on the presumption of violations based on payroll records, whether recovery of wage statement and waiting time penalties may be precluded by a good faith defense by Defendant, and the Court's discretion to reduce any PAGA penalties. *See* Decl. Rodriguez, ¶¶ 9-11. Class Counsel also carefully evaluated the prospect of potential class certification issues, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals in agreeing to the proposed settlement, and the potential PAGA manageability issues. *See id.* at ¶¶ 5-10; *see also* JPR Fee Decl., ¶¶ 7-10.

Based on the records and facts of this case, Plaintiff has secured a gross recovery of approximately 10.8% to 39.2% and a net recovery of approximately 9.5% to 19.8% of the class claims' more realistic range of maximum recovery. *See* Decl. Rodriguez, ¶ 11. Additionally, on average class members will receive a net award of approximately $1,290.14 and an maximum distribution of $5,553.91. *See* Decl. Nava, ¶ 11. This settlement is a reasonable compromise of the claims and is within the percentile ranges of the total available damages that have been approved in other class settlements. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *2, *10 (C.D. Cal. 2017) (approving a settlement where the net recovery to class members was approximately 7.5% of the projected maximum recovery amount [$210,500/$2,750,000]); *Avila v. Cold Spring Granite Co.*, 2018 WL 400315, *2, *6 (E.D. Cal. 2018) (approving a settlement with a gross recovery of 11% of the projected maximum damages available [$500,000/$4,441,633.60]) and a net recovery of approximately 6.7% of the projected maximum recovery [$297,332.98/$4,441,633.60]); *Bellinghausen v. Tractor Suppply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery was approximately 8.5% of the projected maximum recovery [$1,000,000/$11,565,677]).

Defendant's evidence in Support of removal and Plaintiff's election not to challenge the removal does not undermine the exposure analysis in any way. The scope of individuals analyzed in Defendant's notice of removal is larger than the defined class. Under the Agreement, "Class Member"

excludes any individuals employed solely as office or administrative staff and any other non-exempt employee subject to an arbitration agreement. *See* Exhibit A, pg. 2, ¶ 5. "PAGA Member" similarly excludes office and administrative staff. *See id.* at pg. 7, ¶ 24. Thus, while Defendant's removal analysis was based on 469 non-exempt employees and 26,127 weekly pay periods, there are only 179 total Class Members who worked 11,046 weekly pay periods.[2] *Compare* Decl. Rodriguez, ¶ 10 & Nava Fee Decl., ¶ 5 *with* Dkt. No. 11, pg. 3, ¶ 7 (Decl. of Ariel Kumpinsky ISO Deft. Notice of Removal). Additionally, the amount in controversy for removal does not take into account the impact of discovery or legal defenses to the value of claims. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015); *Riggins v. Riggins*, 415 F2d 1259, 1261-1262 (9th Cir. 1969). Yet that is precisely the type of analysis required when evaluating a proposed class settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value"). Rather than risk a potentially extended period of delay in challenging the removal, Plaintiff elected to remain in federal court. *See Acosta v. Evergreen Moneysource Mortgage Company*, 2017 WL 3433205 (E.D. Cal. 2017) (remand motion filed 3/17/17, resolved 8/10/2017); *Gil v. Outback, Inc.*, 2023 WL 8433682 (E.D. Cal. 2023) (remand motion filed 1/21/22, resolved 12/5/23).

### ii. Risk of Maintaining Class Action Status Through Trial

Defendant has continually disputed the propriety of certification of Plaintiff's claims outside of this proposed settlement. *See* Decl. Rodriguez, ¶¶ 5, 9. Although Plaintiff feels strongly that he would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not a certainty as the settlement has taken place before any rulings on certification have been made. Thus, there is a clear risk that must be accounted for in evaluating the adequacy of the settlement. *See id.* Additionally, any potential certification would be subject to later appeal and potential reversal.

---

[2] Because of the opt out, there are 178 Participating Class Members and 11,040 class Workweeks.

### iii. The Amount Offered In Settlement

As noted above, Plaintiff has secured a gross recovery of approximately 10.8% to 39.2% and a net recovery of approximately 9.5% to 19.8% of the class claims' more likely maximum range values. *See* Decl. Rodriguez*,* ¶ 11. On average, Class Members will receive a net award of approximately $1,290.14 and a maximum distribution of $5,553.91. *See* Decl. Nava, ¶ 11. The fact that the proposed settlement is a fraction of the total amount that may possibly be recovered does not render it inadequate. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Plaintiff has provided a detailed exposure analysis demonstrating why the settlement offered in this case is appropriate based on a realistic view of the strengths and weaknesses of this case. *See* Decl. Rodriguez, ¶¶ 9-11. Considering the percentage of recovery in this case compared to other, similar cases, also Support the amount offered in settlement in this case being fair, reasonable, and adequate. *See* Decl. Rodriguez, ¶¶ 9-11.

### iv. The Settlement Is Adequate In Light Of Potential Costs, Risks, and Delays

The parties were in possession of all necessary information during the negotiations and mediation. Plaintiff's counsel conducted investigations and engaged in discovery, including an exchange of documents, records, and company policies that covered all aspects of the class claims and sought information regarding the class members to ensure that Plaintiff could determine liability and create an accurate damages model. *See* Decl. Rodriguez ¶¶ 6-11; JPR Fee Decl., ¶¶ 7-10. As a result, Plaintiff was able to make a reasonable estimation of Defendant's potential liability against which the results of any settlement could be compared. *See id.* For these reasons, the settlement now before the Court was reached at a stage where the parties had a clear view of the strengths and weaknesses of claims and defenses at issue sufficient to Support the settlement. There was also no collusion in reaching the proposed class settlement as the negotiations were adversarial and contentious, although still professional in nature, at all times. *See* Decl. Rodriguez ¶ 8.

### v. The Views and Experience of Plaintiff's Counsel

Plaintiff's counsel have considerable experience in class actions and wage and hour litigation. Plaintiff's counsel have brought and are currently bringing several class actions involving employment law generally and wage and hour issues specifically, having also been approved as class counsel by

numerous Courts. Thus, Plaintiff's counsel are qualified to evaluate the class claims, value of settlement versus moving for certification and going to trial, and viability of possible affirmative defenses. *See* Decl. Rodriguez ¶¶ 13-19; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness"). Plaintiff's counsel believe that the settlement is fair and reasonable in light of the complexities of the case, the uncertainties of class certification and litigation, and the secured benefit to the class. *See* Decl. Rodriguez, ¶ 11.

### vi. The Presence of A Governmental Participant and the Reaction of Class Members

There are no governmental participants in this litigation. However, the reaction of Class Members provides overwhelming Support for the settlement as there are zero objections and only one (1) individual has opted out. *See* Decl. Nava, ¶¶ 6-7; Decl. Lingle ¶ 8. This provides strong evidence that the Settlement is fair, reasonable, and adequate, and should be given final approval.

## VII. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that this Court certify the settlement class, grant final approval of the Agreement, determine that the notice procedures have complied with Class Members' due process rights, grant Plaintiff's request for attorney's fees and costs, representative enhancement, and Settlement Administrator costs as forth in the fee motion being heard concurrently herewith, and adopt the implementation schedule contained in the proposed order filed concurrently herewith.

**Shimoda & Rodriguez Law, PC**

Dated: September 12, 2025   By:   /s/ Justin P. Rodriguez
Galen T. Shimoda
Justin P. Rodriguez
Renald Konini
Attorneys for Plaintiff