UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Lingle,<br><br>                    Plaintiff,<br><br>        v.<br><br>Centimark Corporation, et al.,<br><br>                    Defendants. | No. 2:22-cv-01471-KJM-JDP<br><br>ORDER |

Plaintiff Anthony Lingle moves for class certification and final approval of the agreement to settle class claims against defendant Centimark Corporation. *See generally* Mot. Final Approval, ECF No. 61. Lingle also requests an award of attorneys' fees and costs. *See generally* Mot. Fees, ECF No. 58. Both motions are unopposed. The court held a hearing on October 17, 2025. Justin Rodriguez appeared for Lingle, and Paul Smith appeared for Centimark. The court **grants** the motion for final approval, and **grants in part** the motion for an award of fees and costs, as explained in this order.

**I.    BACKGROUND**

The court discussed Lingle's allegations, the procedural history of this case and the law that applies to the settlement of class actions in its previous orders. *See* Order (Apr. 17, 2023), ECF No. 37; Order (Nov. 15, 2024), ECF No. 47; Order (Feb. 6, 2025), ECF No. 50. The court incorporates those discussions in this order without repeating them. In short, Lingle alleges

1

1  Centimark did not pay some wages due to him and several similarly situated employees, and he
2  alleges Centimark did not offer meal and rest breaks as required by California law, among other
3  related claims under the California Labor Code. *See generally* Second Am. Compl., ECF No. 16.
4  He also asserts representative claims under the California Private Attorneys General Act (PAGA).
5  He originally filed this action in state court, and Centimark removed it to this court in 2022. *See*
6  Not. Removal, ECF No. 1. The parties reached a settlement agreement after the court denied
7  Centimark's motion to dismiss. *See* Stip. & Order, ECF No. 39; Notice of Settlement, ECF
8  No. 40.

9      Lingle then sought this court's preliminary approval of the proposed settlement
10 agreement. ECF No. 43. The court agreed with Lingle that the proposed class was likely to
11 satisfy the requirements of Rules 23(a) and (b)(3), *see* Order (Nov. 15, 2024) at 4–9, but Lingle
12 did not demonstrate the settlement agreement was likely to be approved as "fair, reasonable and
13 adequate," as required by Federal Rule of Civil Procedure 23(e), *see id.* at 9–14. The court
14 identified four areas of concern. First, Lingle did not explain what evidence would demonstrate
15 the parties negotiated at arm's length. *Id.* at 10–11. Second, his counsel did not explain
16 sufficiently why the proposed fee award was fair and reasonable under the circumstances. *Id.*
17 at 11. Third, the court was concerned that the proposal allocated nearly the same amount to the
18 attorneys who represented the class as to the proposed class members. *Id.* at 11–12. Fourth,
19 Lingle did not show class members would receive adequate compensation given the harms they
20 allegedly suffered. *Id.* at 12–14. The court denied his motion for preliminary approval without
21 prejudice to renewal, if he offered more information and explained why the settlement agreement
22 was fair, reasonable and adequate. *Id.* at 14.

23     Lingle renewed his motion. ECF No. 48. The court remained "concerned with the
24 absence of evidence showing the parties negotiated at arm's length, the size of the proposed fee
25 and cost awards and discounts to the potential damages award." Order (Feb. 6, 2025) at 6, ECF
26 No. 50. Specifically, the renewed motion did not "add evidence to the record showing the parties
27 negotiated at arm's length." *Id.* at 4. It did not point to evidence justifying the proposed
28 attorneys' fee. *Id.* at 4–5. It did not address the court's concern "that the amount of the proposed

fees and costs was similar to the amount of the payments to the class members." *Id.* at 5.  But Lingle's counsel did "offer more information in response to the court's concern that the settlement agreement heavily discounts the potential damages award to class members." *Id.*  On balance, these concerns made for a "close call," but the court found it was "likely to approve the settlement as fair, reasonable and adequate if Lingle ultimately offered evidence to support his counsel's assertions in his sworn declaration that the negotiations before the mediator were "contentious and adversarial." *Id.*  The court made clear it did not "anticipate granting final approval of the proposed settlement agreement without reviewing the parties' mediation filings or equivalent records in camera." *Id.* at 7.  Counsel arranged for notice to be sent to the members of the proposed class.  No class members objected, and one class member opted out.  Lingle now seeks final approval of the settlement, ECF No. 61, and an award of fees and costs, ECF No. 58.

## II.     FINAL APPROVAL

As noted, the court previously found the proposed class was likely to be certified under Rules 23(a) and (b)(3).  *See* Order (Nov. 15, 2024) at 4–9.  The court now finds the proposed settlement class in fact meets the requirements of Rule 23.  It is sufficiently numerous, with almost 180 members.  *See* Fed. R. Civ. P. 23(a)(1); Rodriguez Cert. Decl. ¶ 10, ECF No. 61-2.  Lingle's legal claims are typical of the class's claims, if not functionally identical.  *See* Fed. R. Civ. P. 23(a)(3); Order (Nov. 15, 2024) at 5–6.  There are multiple common questions about Centimark's payment and break policies, *see* Fed. R. Civ. P. 23(a)(2), and those questions predominate over questions affecting individual class members, *see* Fed. R. Civ. P. 23(b)(3); *see also* Order (Nov. 15, 2024) at 4–5, 7–8.  That is particularly true in light of the proposed settlement agreement, which would make a trial unnecessary if it is approved.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The relatively small value of each class member's claims, combined with the absence of any similar litigation or more convenient forum, shows a class action is the superior means of resolving the class claims.  *See* Fed. R. Civ. P. 23(b)(3); Order (Nov. 15, 2024) at 9.  Finally, the court finds Lingle and his attorneys have pursued his and the class's claims adequately for purposes of the prerequisite in Rule 23(a)(4).  In sum, as this court observed in its previous order, this case is similar to other wage and hour

disputes that have been successfully litigated on behalf of a class of employees.  *See, e.g.*, Order (Nov. 15, 2024) at 8 (collecting authority).  The court therefore finds this action may be certified as a class action for purposes of settlement under Rule 23(a) and (b)(3).

The court must next decide whether the proposed settlement agreement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Under Rule 23(e), the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing classmember claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.*  "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors' ":

> (1) the strength of the plaintiff's case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (line breaks added) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011), in turn quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 23, Advisory

Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) not intended to "displace" factors identified in existing judicial decisions).

These factors and requirements are driven by "unique due process concerns" about the rights and interests of the people who will be bound by the proposed settlement, but who are not named as plaintiffs in the complaint. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). These absent class members may have different interests and motivations than the attorneys who ask to represent them. *See id.* An attorney representing a class may be tempted to accept an inferior settlement in return for a higher fee, for example. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay an adversary a bit more if the overall deal is better for the client. *See id.* Class action settlement agreements do eliminate the uncertainties and high costs that come along with continued fact discovery, expert discovery, summary judgment motions, trial preparations and the trial itself. The elimination of uncertainty and the savings of time and money are, of course, among the primary advantages of a settlement agreement. These advantages have led federal courts to develop a "strong" policy in favor of settling class actions. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). But the prospect of a quicker and cheaper resolution casts a shadow over the inquiry required by Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court rejects the proposal, it will not only be delaying any award to the members of the proposed class, but also put that award at risk. *Id.*

Here, having reviewed the record, many features of the proposed settlement agreement weigh clearly in favor of final approval. Only one member of the class has opted out, and none has objected. The settlement agreement treats all employees fairly by allocating the gross settlement funds based on an objective set of criteria, and there are no reasons to suspect any difficulties may arise in distributing the settlement funds quickly and efficiently. The settlement

agreement also makes further motion practice, discovery, litigation and a trial unnecessary. The parties reached that agreement with the help of a third-party neutral.

Now, as before, the court remains concerned with some information Lingle has provided. For example, Lingle's counsel submitted a declaration in support of the motion for final approval. *See generally* Rodriguez Decl., ECF No. 61-2. That declaration is very similar to the declaration counsel submitted with Lingle's original motion for preliminary approval and his renewed motion for preliminary approval. Most of the paragraphs in those declarations are identical, word for word. As noted above, the court could not conclude on the basis of this information whether the parties negotiated at arm's length and whether the proposal was fair, reasonable and adequate. But the parties have now offered their confidential mediation briefs for the court's consideration, including one provided just before hearing. Upon the court's careful review, those briefs offer two necessary assurances. Because the briefs are confidential and were prepared in connection with a mediation, the court will not review them in detail in this order. It suffices to say the briefs support counsel's assurances that the parties negotiated at arm's length and show the settlement agreement is fair and reasonable. And as the court confirmed at hearing:

(1) Class certification would have been contested and was far from a given, due for example to arguments the defense would likely have made about Lingle's adequacy, the typicality of his claims, and the difficulties of conducting a class-wide trial;

(2) Centimark would have put up strong defenses at the summary judgment stage based on, among other things, its written policies and its automated systems, which may very well have narrowed the case significantly; and

(3) If the case had gone to trial, a jury might not have credited Lingle's testimony, and Centimark would likely have presented extensive evidence contradicting his testimony.

A settlement agreement eliminates these uncertainties and permits class members to receive a substantial recovery now. These considerations support the motion for final approval. For the same reasons, the court finds the settlement of plaintiff's PAGA claims meets the

6

applicable state law standard. *See* Order (Feb. 6, 2025) at 8–9, ECF No. 50 (summarizing relevant law and relationship between PAGA and class claims).

### III. FEES AND COSTS

#### A. Attorneys' Fees

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even when the parties have agreed on an amount, the court must award only reasonable attorneys' fees. *See Bluetooth*, 654 F.3d at 941. In diversity actions such as this one,[1] the Ninth Circuit "has applied state law in determining not only the right to fees, but also in the method of calculating fees." *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995); *see also Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012). California courts permit the payment of attorneys' fees from a settlement. *See Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).

Federal district courts sitting in diversity evaluate fee awards using two methods: (1) as a percentage of the total settlement fund and (2) in light of the "lodestar," i.e., the product of a reasonable hourly rate and a reasonable number of hours dedicated to the case. *Kim*, 8 F.4th at 1180. District courts have discretion to use the method they find most fitting. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Percentage awards are simple and transparent, but they might be unreasonable, depending on the relative size of the award and how much work was required to obtain it. The lodestar fee can therefore serve as both a "cross check" against and a substitute for percentage-based awards. *See Bluetooth*, 654 F.3d at 944–45; *Espinosa v. Cal. Coll. of San Diego, Inc.*, No. 17-0744, 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018). In the end, however an award is calculated, the reviewing court's goal is the same: "a reasonable fee to compensate counsel for their efforts." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (2009) (quotation marks and citations omitted).

---

[1] The operative complaint includes no federal claims. Centimark removed the case to this court under § 1332(d), commonly known as the "Class Action Fairness Act" or "CAFA." *See* Not. Removal ¶¶ 6–65, ECF No. 1.

7

Courts within this circuit typically begin with a 25 percent benchmark. *See Bluetooth*, 654 F.3d at 942; *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (unpublished). California state courts also have referred to a 25 percent benchmark, but they have often been willing to approve awards of up to 33 percent of the total fund. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (noting fees of up to one-third frequently awarded but "fee award of 25 percent is the benchmark" for "common fund cases" (internal quotation and alteration marks omitted)); *see also Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2020 WL 5535399, at *8 (E.D. Cal. Sept. 15, 2020) (collecting authority). Awards above the 25 percent benchmark may be appropriate "when counsel achieves exceptional results for the class, undertakes extremely risky litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis." *Seguin v. County of Tulare*, 16-01262, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (quotation marks omitted) (citing *Vizcaino*, 290 F.3d at 1048–50).

Counsel here requests an award of $200,000, which represents one third of the total $600,000 settlement amount, more than the 25 percentage benchmark and equivalent to 33 percent. *See* Fees Mem. at 1, ECF No. 58-1. Although counsel has demonstrated the settlement award is fair and reasonable, counsel has not demonstrated the settlement represents an "exceptional result" for the class under the authorities above. Nor has counsel identified any unsettled, difficult or complex legal or factual issues. The record does not show this litigation was unusually risky. The case also involved relatively little pretrial litigation and revolved around routine theories of unpaid or late wages under frequently litigated provisions of the California Labor Code. Although counsel did take this case on a contingency basis, the matter did not involve the types of complexities and difficulties courts have found to justify awards above the 25 percent benchmark. *See, e.g.*, *Borelli v. Black Diamond Aggregates, Inc.*, No. 14-02093, 2022 WL 2079375, at *9–10 (E.D. Cal. June 9, 2022) (noting lengthy, hard-fought litigation over arbitration dispute); *Pena v. Taylor Farms Pac., Inc.*, No. 13-01282, 2021 WL 916257, at *5 (E.D. Cal. Mar. 10, 2021) (approving 35 percent award in wage and hour class action because case had been hard-fought and lasted many years).

The court has considered whether a higher 33 percent award may be reasonable by calculating the lodestar fee, beginning with the proposed hourly rate. Two of the class attorneys calculated their lodestar fee in this case based on hourly rates of more than $700; a third proposes a rate of $475 per hour. *See* Rodriguez Decl. Ex. A, ECF No. 58-2. Courts in this district, including the undersigned, generally have awarded lower rates in similar wage and hour class actions, often on the order of $300–600 per hour, depending on the attorneys' experience. *See, e.g.*, *Anderson v. Safe Streets USA, LLC*, No. 18-00323, 2024 WL 4826446, at *3 (E.D. Cal. Nov. 19, 2024) (reviewing reasonable rates in wage and hour class action); *Stoddart v. Express Servs.*, No. 12-1054, 2021 WL 5761083, at *5–6 (E.D. Cal. Dec. 3, 2021) (same); *Smothers v. NorthStar Alarm Servs.*, LLC, No. 17-0548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (same). Hourly rates of $700 typically are approved only for attorneys with thirty years' experience or more, greater than that of counsel here. *Compare* Rodriguez Decl. ¶¶ 13, 15, 18 (summarizing qualifications of attorneys with about ten, fifteen and twenty-five years' experience, respectively) *with, e.g.*, *Anderson*, 2024 WL 4826446, at *3 (approving rates above $600 only for attorneys with 30 years' experience or more in wage and hour class action). Here, the court finds rates of about $300–$550 per hour would be reasonable, representing a reduction of about 40 percent to the total lodestar fee.

Second, the court has reviewed counsel's detailed time records. These records do not reveal any obviously or facially unreasonable uses of time. In broad strokes, counsel devoted the most time and effort in this case to the preparation of amended pleadings, Lingle's response to Centimark's motion to dismiss, discovery efforts, and settlement negotiations. *See* Rodriguez Decl. Ex. A. These were all reasonable pursuits. But many of counsel's descriptions of their time are vague and billed in block format. This is particularly true of the largest entries, i.e., those that increased the lodestar fee the most. An example illustrates this problem: counsel requests a $4,760 fee for about seven hours reviewing notes "re: discovery responses" and research "re: objections for further meet and confer." *See id.* (Rodriguez records for Mar. 16, 2022). Counsel cannot be expected to waste time documenting their work in great detail, but generalized timekeeping entries prevent the court from assessing whether counsel devoted a reasonable

amount of time to a given task. The large but vague timekeeping entries here justify a small across-the-board reduction to the lodestar fee, on the order of 5 percent. *See United States ex rel. Doe v. Biotronik, Inc.*, No. 09-3617, 2015 WL 6447489, at *10–11 (E.D. Cal. Oct. 23, 2015) (imposing similar reduction), *aff'd in relevant part*, 716 F. App'x 590 (9th Cir. 2017) (unpublished). The court also finds a reduction to the number of hours billed is appropriate given the necessity of a second motion for preliminary approval, which could likely have been avoided through more thorough briefing the first time around. *See Santos-Ortiz v. Criterion Supply, Inc.*, No. 10-7532, 2012 WL 13418897, at *3 (C.D. Cal. May 15, 2012) (discussing similar reduction to account for hours devoted to avoidable "second joint motion for preliminary settlement approval"). After reviewing counsel's timekeeping records, the court finds about 25 hours of work in November and December 2024 could likely have been avoided, which supports a further reduction of $10,000 to the lodestar, based on the applicable hourly rates.

Counsel calculates a total lodestar fee of about $310,000, based on the billing rates and hours it provides in the first instance. *See* Rodriguez Decl. ¶ 2. After applying the reductions the court finds appropriate as explained above, the adjusted total lodestar fee comes to about $160,500. That figure is lower than the 33 percent award counsel proposes ($200,000) and higher than the 25 percent benchmark award ($150,000). The court need not and does not perform a more precise lodestar calculation than this. *See Ferrell v. Buckingham Prop. Mgmt.*, No. 19-00332, 2022 WL 224025, at *3 (E.D. Cal. Jan. 25, 2022) ("Where a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar." (citation and quotation marks omitted)). The court notes only that based on the targeted review it has conducted here, "a full analysis" and more searching review would likely result in further reductions to the lodestar figure. *Id.* For these reasons, the cross-check against the lodestar fee does not show the 25 percent benchmark fee would be unreasonable or that any upward adjustment is necessary. The court therefore grants counsel's request for an attorneys' fees award at the 25 percent benchmark rate, i.e., $150,000.

**B.     Enhancement or Incentive Award to Plaintiff**

The settlement agreement provides for an enhancement or incentive award of up to $10,000 to Lingle as class representative. He requests the full award. *See* Fee Mem. at 10–12.

Incentive payments to class representatives are a matter within the court's discretion. *See Adams v. City & Cty. of Honolulu*, No. 12-00667, 2017 WL 3880651, at *1 (D. Haw. Sept. 5, 2017). In determining whether to approve an enhancement payment, courts generally consider the (1) "the risk to the class representative in commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative;" (4) "the duration of the litigation"; and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citation omitted); *see also, e.g.*, *Zakskorn v. Am. Honda Motor Co., Inc.*, 11-02610, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015). Courts also examine "'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" *Flores v. ADT LLC*, No. 16-00029, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (alteration in original) (quoting *Reyes v. CVS Pharmacy, Inc.*, No. 14-00964, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)). Finally, courts normally consider the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

These factors support an award to Lingle here, but not the $10,000 he requests. Lingle states in a declaration that he devoted about 100 hours to this case, often on nights and weekends. Lingle Decl. ¶ 8, ECF No. 58-3. He helped review documents, described how and where he and other employees worked, identified potential witnesses, participated in settlement negotiations and mediation, and spoke with his attorneys and potential class members, among other tasks. *See id.* ¶¶ 5–8. An additional award is an appropriate way to compensate him for these efforts. But Lingle does not claim to have incurred any other specific costs or harm to his reputation or personal life, and he does not offer any information about notoriety or negative publicity as a

11

1  result of this case.  The court also notes that a $10,000 award would be significantly more than
2  both the average award to class members (about $1,300) and the maximum award (about $5,600).
3  *See* Nava Decl. ¶ 16, ECF No. 58-4.  It also would represent about 1.7 percent of the $600,000
4  gross settlement amount.  The court finds a $5,000 award would compensate Lingle more
5  reasonably in these circumstances.  *See, e.g.*, *Ogbuehi v. Comcast of Cal. /Colo. /Fla./Ore., Inc.*,
6  No. 13-00672, 2015 WL 3622999, at *14 (E.D. Cal. June 9, 2015) (collecting authority
7  supporting a $5,000 award in similar cases).

        C.     **Costs**

Finally, counsel requests an award of $11,668.27 in litigation costs and $8,687.04 in costs incurred by the settlement administrator.  *See* Fee Mem. at 1, 17.  These sums are reasonable for a case of this type, complexity and duration.  *See, e.g.*, *McClure v. Waveland Servs., Inc.*, No. 18-01726, 2021 WL 5204151, at *5 (E.D. Cal. Nov. 9, 2021) (approving similar costs award in similar wage and hour class action); *Ogbuehi*, 2015 WL 3622999, at *12–13 (same).

**IV.    CONCLUSION**

The court **grants** the motion for final approval (ECF No. 61), and orders the following implementation schedule, using terms as defined in the motion for final approval and settlement agreement:

- Last day for Settlement Administrator to calculate the final Net Settlement Amount, the final Individual Settlement Amounts for Participating Class Members and/or PAGA Members, any applicable taxes thereon, any report the results of these calculations to Class Counsel and Defendant's Counsel. Settlement Administrator shall send to Defendant's Counsel the electronic wiring instructions for the Settlement Amount: 7 calendar days after the Effective Date.
- Defendant shall fund the settlement: 30 calendar days after the Effective Date.
- Last day for Settlement Administrator to deliver payment of Class Counsel's awards and costs, Class Representative Enhancement Payment, PAGA Payment, Settlement Administrator Costs, payment to Participating Class Members, and

payment to PAGA Members: 7 calendar days after Defendant has funded the settlement.

- Settlement Administrator shall mail reminder postcards to the Participating Class Members and PAGA Members whose settlement checks were not returned or cashed: 100 calendar days before the Individual Settlement Payments and Individual PAGA Payments expire.
- Check Cashing Deadline for Class Members and PAGA Members: 180 calendar days after the mailing of the Individual Settlement Payments and Individual PAGA Payments.
- Settlement Administrator shall send any remaining funds to Salvation Army Sacramento Metro: 14 calendar days after the check cashing deadline.
- Settlement Administrator shall provide a compliance declaration to the Parties: 21 days after the check cashing deadline.
- A declaration from the Settlement Administrator shall be filed by **November 13, 2026**, detailing the complete disbursement of funds in compliance with this order.

The court retains jurisdiction to monitor and enforce the terms of this order and the approved Agreement.

The court **grants in part** the motion for attorneys' fees (ECF No. 58). The court awards the following amounts, to be paid from the Gross Settlement Amount pursuant to the terms and timeframe set forth in the Agreement:

- Attorneys' fees of $150,000 to class counsel;
- An incentive award of $5,000 to plaintiff Anthony Lingle;
- Litigation costs of $11,668.27; and
- Settlement administrative costs of $8,687.04.

The clerk's office is instructed to **close this case and enter judgment**.

IT IS SO ORDERED.

DATED: November 20, 2025.

SENIOR UNITED STATES DISTRICT JUDGE